MICHAEL TIERNEY v. BEN. FRAZIER AND LE GIERSE & Co.

(Case No. 3169.)

1. EXECUTION — LEVY — SHERIFF, WHEN PROTECTED.— A sheriff is protected in levying an execution, although he may have been notified of outside facts rendering it invalid.

2. SAME — KNOWLEDGE — NOTICE.— The law will not charge the officer with knowledge of the invalidity of the writ by reason of his having been so notified. But *quere*, would the sheriff be protected where the facts rendering the execution void had occurred under his personal observation?

3. SAME — PAYMENT — RECEIPT.— Where the defendant in execution produced to the sheriff receipts from the judgment creditor acknowledging full satisfaction of the judgment, but specifying the receipt of a sum several dollars less than the judgment, and specifying also that the party giving the receipt would pay all costs, the officer was justified in declining to pass upon the genuineness and validity of the receipts, and in proceeding to make a levy.

4. SAME — MALICE IN OFFICER.— The act of levying, being legal, would not become actionable though done with a bad intent, or maliciously and willfully.

5. PRACTICE IN SUPREME COURT — DEMURRER TO EVIDENCE.— An appellant who joined in a demurrer to the evidence without objecting to it as not made at the right time, cannot make that objection available in the supreme court.

6. DEMURRER TO EVIDENCE.— See this case for facts held sufficient to sustain a demurrer to the evidence.

ERROR from Caldwell.   Tried below before the Hon. John P. White in 1875.

The opinion states the case.

*Nix & Storey*, for plaintiff in error.

*James H. Burts*, for defendants in error.

I. While the execution was regular upon its face, a receipt from the plaintiff in execution, in full payment of the judgment, destroyed the power or authority of the sheriff to proceed under it, and the sheriff who proceeds to levy under such an execution does so at his peril.   The law will presume the sheriff to be a man of some brain, and of ordinary perceptive faculties, and will expect and require him to be satisfied with testimony that would satisfy any other reasonable mind.   There is no excuse for any doubt on the part of Frazier of the genuineness of the receipt and certificate. They are written on the printed letter-head paper of Le Gierse & Co., dated at Galveston, October 28, 1874.   Tierney declared to him that these papers were executed and delivered to him upon the payment of this judgment, and that he owed plaintiff in execution nothing.

II. It is not proper for the court to consider a demurrer to evidence, unless the demurrer is submitted before the party demurring introduces his evidence.   In this case the demurrer was not submitted by appellees, Le Gierse & Co., until after they had introduced all their testimony; in fact, until after all the evidence was introduced on both sides.   They thus get the moral weight of their own evidence to aid their demurrer to other evidence.   It is said by this court in Harwood *v.* Blythe, that "A demurrer to the evidence is a demurrer to the competency of the evidence, and admits its sufficiency; consequently all the judge can decide on a demurrer to the evidence is whether any competent evidence was given or not."   See 32 Tex., 803, 804; also Bradbury *v.* Reed, 23 Tex., 260.

GOULD, CHIEF JUSTICE.— Le Gierse & Co., of Galveston, having recovered a judgment in a justice's court of Dallas county against

M. Tierney for $95.55 and costs of suit, amounting to $17.50, caused execution thereon to be issued to Caldwell county, to which Tierney had removed.     This execution came to the hands of the sheriff October 26, 1874, and being by him placed in the hands of his deputy, Frazier, was by the latter, about November 3d, levied on four mules, the property of Tierney.     This suit is brought by Tierney to recover damages for said levy, alleging that he had, on October 28th, paid off and satisfied said judgment to Le Gierse & Co., at Galveston, and charging that the seizure of his property thereafter by virtue of the execution was unauthorized and wrongful, and charging further that the levy was made by the deputy sheriff, knowing the facts, maliciously, and for the purpose of extorting money, and was maliciously instigated by Le Gierse & Co.     In support of his action he produced the following instruments:

"LE GIERSE & Co., Wholesale  }  No. ——.     Galveston, Texas,
      Grocers and Importers.      }              October 28, 1874.

      "Received of Mr. M. Tierney ninety-two $\frac{00}{100}$ dollars in full of account up to date.                              LE GIERSE & Co.
      "$92.00.                                                Per K."

      "L. LE GIERSE.            M. LASKER.            B. MARCUS.

" Office of Le Gierse & Co., Wholesale Grocers and Importers,
            Corner Strand and 22d Streets.

                  "GALVESTON, Texas, Oct. 28, 1874.

"This is to certify that the judgment which was rendered in our favor against M. Tierney has been satisfied by him, and that we will pay all costs accrued in same.                        LE GIERSE & Co."

One or both (the evidence is contradictory) of these instruments was exhibited to Frazier when he first demanded a levy, but in a day or two afterwards he proceeded to levy on the mules.     On November 13th he was about to sell the mules, when a letter from Le Gierse & Co. to the sheriff, directing the return of the property levied on, was produced by Tierney, to whom it had been inclosed in reply to a letter by him, and by order of the sheriff, who was present, the property was released.     There was a large amount of evidence adduced, but this statement is believed sufficient to present what we regard as the main legal question in the case.     The judge instructed the jury that the execution was regular and in due form; that having such process in his hands, the officer was under no obligation to inquire further, but, unless satisfactory evidence was produced that the judgment was satisfied, was bound to proceed to demand a levy, and that to find him liable for the wrongful levy of

such an execution, the evidence must show that he acted "maliciously, willfully and wrongfully." The position taken by appellant is that the payment of the judgment destroyed the authority of the sheriff to proceed under the execution, and that evidence of such payment which would satisfy a reasonable mind having been produced to him, he became liable as a trespasser by thereafter proceeding to levy. The following extract from Freeman on Executions presents that side of the question: "It is clear that, if the writ gives notice of the matters rendering it void, the officer is responsible; for, while it is reasonable to protect officers against secret vices in the proceedings, it is unreasonable that they should be encouraged in the perpetration of a legal wrong of which they have been notified. But suppose that, though the writ is in due form, the officer has, outside of the writ, been informed of a state of facts which, if set forth in the writ, would make him answerable as a trespasser for its attempted execution; is it any greater hardship to require him to know the legal consequence of these facts, than it is to make a similar requirement when his knowledge had been obtained from an inspection of the writ? If he is competent to determine the question in the one case, he is equally so in the other; and we think that the majority of the reported cases will sustain the proposition, that an officer is not justified in attempting to execute a void writ when he has knowledge of the facts rendering it void, whether his knowledge be obtained from the writ or otherwise." Freeman on Executions, sec. 103, citing Sprague v. Birchard, 1 Wis., 457; McDonald v. Wilkie, 13 Ill., 22; Batchelder v. Currier, 45 N. H., 460; Watson v. Bodell, 14 Mees. & Welsb., 57; Grace v. Mitchell, 31 Wis., 533 (11 Am. Rep., 613).

In McDonald v. Wilkie the officer was protected, and the remark that if he had "notice of an excess or want of jurisdiction in the justice to issue the process, he would doubtless render himself liable under it," was a dictum. The same may be said of Sprague v. Birchard, as appears from the reference to it in Grace v. Mitchell, in which latter case the opinion of the court was made to turn on the right of an officer to demand indemnity before levying. Watson v. Bodell was a case in which the plaintiff was detained by virtue of a written order, which order was without jurisdiction, and void; and as in other cases where the want of authority appears on the face of the writ, the officer was bound to know its invalidity. These are all the authorities cited except the case in 45 N. H., which is not accessible to us at this place. We think that they fall short of establishing Mr. Freeman's proposition, which is limited to cases where

the officer has knowledge of the facts rendering the writ void, and much more do they fall short of establishing that the officer is to be treated as a trespasser, if it turns out that the judgment, though unsatisfied when the execution issued and came to his hands, was satisfied at the time of the levy, because he was notified of the fact in some questionable or unsatisfactory manner, or in any way which might fail to produce a conviction equivalent to actual knowledge.

Mr. Justice Cooley, in his book on Torts, takes a different view from Mr. Freeman of the question. "Whether, when an officer knows that back of process fair on its face are facts which render it void, he is nevertheless protected in serving it." After admitting that this is a point on which the authorities are not agreed, and referring to the authorities on each side, including a recent case in Illinois not cited by Mr. Freeman, and to which we have not access, he concludes thus: "It seems to us, therefore, that the weight of authority and of reason is clearly in favor of the proposition, that the officer may safely obey all process fair on its face, and is not bound to judge of it by facts within his knowledge, which may be supposed to invalidate it." He cites Weller v. Gay, 24 Wend., 485; People v. Warren, 5 Hill, 440; Wilmarth v. Burt, 7 Met., 257; Twitchell v. Shaw, 10 Cush., 46; Watson v. Watson, 9 Conn., 140, 146 (citing Belk v. Broadbent, 3 T. R., 183–185; Gruman v. Raymond, 1 Conn., 40; Miller v. Davis, Comyn, 590); Cunningham v. Mitchell, 67 Pa. St., 78; Brainard v. Head, 15 La. Ann., 489; Wall v. Trumbull, 16 Mich., 228; Bird v. Perkins, 33 Mich., 28; Richards v. Nye, 5 Oreg., 382.

Our examination of a number of these authorities (we have not access to all of them) leads us to agree with Judge Cooley both as to the weight of authority and of reason. Chief Justice Shaw, in a case where the evidence exhibited to the officer was a discharge under the insolvent law of the state, states the reason for "this valuable rule" to be, "that it would paralyze the action of an officer, and often defeat the service of legal process, if he were bound to stop and try the genuineness and validity of a certificate of discharge under a bankrupt or insolvent law. The certificate may not be genuine or legally authenticated, and yet the officer can take no evidence, nor even put the debtor himself under oath to prove it." Again he says: "Is the officer to try all the questions of law and fact involved in the question of the genuineness, the validity and the application of the discharge to this particular debt? To hold that an officer would be liable in trespass for executing the command of his precept, would be to hold that an executive officer must try all these questions without power to summon a witness or

hear the parties, and to decide the case correctly, upon peril of being liable for damages for false imprisonment." Wilmarth v. Burt, 7 Met., 260, 261.

The safe rule seems to us that which protects the executive officer in obeying a legal writ in his hands, and does not charge him with knowledge of the invalidity of that writ by reason of any outside facts of which he may be notified. Whether the same protection should be extended to the officer where the facts rendering the writ void became absolutely known to him by means of his own personal observation of their occurrence, it is not, in this case, important to inquire.

The case of Twitchell v. Shaw has many points in common with the one before us. Shaw, a constable with an execution in his hands against Twitchell, proceeded to make a levy, notwithstanding the latter produced to him a receipt from the judgment creditor expressed to be in full satisfaction of the debt, and notwithstanding a disinterested person told him at the time that he was present at the settlement, and saw the money paid and the receipt and discharge executed and delivered. It seems that the amount named in the receipt was less than the sum for which the judgment was rendered. The court say: " We are strongly inclined to the opinion that, as between the parties, a receipt for a smaller sum cannot operate as the discharge of a larger, because it is without consideration for the excess, and is not an accord and satisfaction. Brooks v. White, 2 Met., 283; Tuttle v. Tuttle, 12 Met., 554. But another ground appears to us decisive. We do not understand that after the execution was delivered to the officer for service, the plaintiff, the execution creditor, gave him notice not to serve it. The debtor exhibited his receipt, and offered a witness to prove the settlement. But the officer was not bound to investigate the genuineness or sufficiency of the receipt; he held an execution from a court of competent jurisdiction, and that was a legal justification to him for taking and selling the present plaintiff's property. No action, therefore, either of trespass or case, can be maintained against him by the present plaintiff." 10 Cush., 48.

The judgment against Tierney was several dollars in excess of the amount of the receipt which he held, and the question of its sufficiency to show a satisfaction in full of the judgment would reasonably have suggested itself to the deputy sheriff. More than that, the costs, as appeared by the execution, amounted to $17.50, and the other instrument held and exhibited by Tierney showed that at the date of its execution those costs remained unpaid, Le Gierse & Co. promising to pay them. Under these circumstances, can it be said

that judgment was satisfied, or that the execution conferred no authority to levy and sell? This court has heretofore declined to go beyond the authorities in holding executions void by reason of matters not appearing of record. Owen *v.* City of Navasota, 44 Tex., 521–2.

With the lights before us we are not prepared to say that the execution was invalidated by reason of the payment made and receipts given. But however this may be, we are satisfied that the deputy sheriff was legally justified in declining to pass upon the genuineness and validity of the receipts held by Tierney, and in proceeding to make a levy, and that by so doing he did not subject himself to any action by Tierney for damages. The act of levying being legal, it did not "amount to a legal injury, and could not be actionable because it was done with a bad intent." Cooley on Torts, p. 688, and authorities cited. That part of the charge which allowed the jury to find against defendant Frazier if the levy was made "maliciously, willfully and wrongfully," was erroneous. It may be remarked that an examination of the evidence has led us to the conclusion that no bad motive or wrongful intent on the part of Frazier was shown. But at all events, his act in levying was justified by the execution, and the action was not maintainable against him. That being the case, it is not material to inquire whether the charge on his branch of the case was in all respects correct or not.

In regard to the other defendants, the case was taken from the jury by a demurrer to the evidence, and that demurrer was sustained by the court, and we think rightly sustained. They had given to Tierney two instruments evidently designed to protect him from any execution on the judgment, and having done this, they might well rest in the belief that Tierney would use them as intended, and that they would effectively serve as their order countermanding the execution. See Schiebel *v.* Fairbrim, 1 Bos. & Pull., 388, cited and stated in Brown *v.* Peter, 7 Wend., 308. When they learned that these had not proved effective, they followed them up by an order to the sheriff. The circumstances negative the charge that the levy was authorized or instigated by them, or that they were culpably negligent in the matter.

The objection that the demurrer to the evidence was not made at the right time cannot avail the appellant, because he not only failed to make it at the time, but actually joined in the demurrer.

Being of the opinion that the judgment below should be affirmed, it is so ordered.

AFFIRMED.

Transferred to Tyler, and opinion delivered October 30, 1882.]