**PARKER et al. v. HOLSTEAD et al.**
(No. 411–3774.)

(Commission of Appeals of Texas, Section B. Nov. 21, 1923.)

1. **Judgment ⚖️882—Judgment creditor without knowledge of amount due need not accept sum tendered as payment in full.**

A plaintiff in judgment is not required to accept a certain sum in full payment of judgment and costs when he does not know, and cannot know by the exercise of ordinary care before the sheriff's sale, that the sum is sufficient for full payment.

2. **Judgment ⚖️875—Conditional acceptance of check by judgment creditor not payment subsequent invalidating execution sale.**

Where judgment creditor on conditional acceptance of a check from a third person for the motor boat attached stated that he did not know if it would pay off everything, and later returned it because he did not know the amount of the costs for keeping the motor boat for two years, such acceptance was not a payment of the judgment; and execution sale the following day was valid.

3. **Execution ⚖️271—Record authorizing execution, purchaser at sale takes title valid until set aside.**

A purchaser at execution sale, who looks to the record, and finds there a valid existing judgment authorizing execution, and who in good faith buys, pays the purchase money, and receives a deed, takes title which is valid until set aside.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by C. B. Holstead and others against J. N. Parker and others. Judgment

for defendants was reversed, with instructions by the Court of Civil Appeals (238 S. W. 287), and defendants bring error. Reversed, and judgment of district court affirmed.

E. L. Bruce, of Orange, and A. D. Lipscomb, of Beaumont, for plaintiffs in error.

Holland & Holland, of Orange, for defendants in error.

POWELL, J. This was a suit by defendants in error, as plaintiffs in the trial court, against plaintiffs in error, as defendants in the trial court, for the title and possession of a motor boat. The plaintiffs in the trial court seized the motor boat under a writ of sequestration, but it was surrendered to the defendants in the trial court by the sheriff under their replevy bond. The trial in the district court was before the court, without a jury. Judgment was there rendered for defendants. The trial court fixed the value of the boat at the time it was replevied at the sum of $1,000, and its reasonable rental value at $6 per day.

The following agreement was offered in evidence:

"It is agreed in this suit that Thomas S. Plunkett was the owner of the boat sued for on and prior to May 31, 1920. That on April 30, 1918, Weaver & Son obtained in the district court of Orange county, Tex., against Thomas S. Plunkett, a judgment which by payment had been reduced to the sum, principal, and interest of $252.13; and that there was in said cause incurred the sum of $341.85, costs, and on May 21, 1920, order of sale issued in said cause, under which the boat in question was advertised for sale by the sheriff of Orange county, Tex., to satisfy said judgment and costs, the sale to be made June 1, 1920. That the judgment and order of sale and advertisement above referred to were all valid and regular, and the total amount for which said boat was being sold was the sum of $593.98 (the judgment, interest, and court costs) and the further costs and charges accruing under order of sale."

The record shows that the sheriff's sale occurred, as advertised, between 10 and 11 o'clock on the morning of June 1, 1920; that the boat was sold for $750 to one Adams, who in turn sold it to Parker. The sheriff made a regular bill of sale to Adams, and paid out the $750, discharging the judgment and all court costs, including the costs of the sale, and sending the remainder, something more than $100, to Plunkett. The title of Parker is under this regular and lawful sheriff's sale. Both of the lower courts found that neither the sheriff, Adams, nor Parker had any knowledge whatever of the claim by Brown or Holstead to this boat, and that there was nothing to put them upon inquiry to discover such a claim.

The claim of Brown and Holstead to the boat is based upon an alleged settlement of the judgment on the afternoon before the sale.

⚖️For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Upon this issue the facts are undisputed. There is no contradiction in the testimony of the witnesses. The material facts in that connection, in a large measure, are set out in full by the Court of Civil Appeals in its opinion, and we do not care to encumber the record here with a repetition of all these facts. Suffice it to say that these facts, in substance, show that Lutcher Brown agreed with Plunkett to purchase the boat for $720; that Brown went to Weaver, plaintiff in judgment, and told him of this agreement with Plunkett, offering Weaver his check for the $720; that Weaver took it, but did not accept it in full payment of the judgment; that he told Brown he did not know whether the check would pay off everything or not; that he would take the check to his attorney, Judge Bruce, and be governed by what Bruce might say about it; that the check was carried to Judge Bruce by Weaver late that same afternoon; that Judge Bruce did not know what the costs of the sheriff for having cared for the boat about two years would be, and was doubtful that the check for $720 would be sufficient to cover it all; that he left his office to hunt Brown and return him his check and advise him that the sale would go ahead next morning; that he was unable to find him in town; that he then 'phoned to his residence to tell him the check would not be sufficient in all probability; that he found Brown had left town for Palestine; that, on the morning of the sale, Judge Bruce talked to the deputy sheriff who had the sale in charge, and asked him, before the sale, what the costs would be; that the deputy answered he did not know until he could consult with the sheriff, but that the judgment and costs would be more than $720; that Judge Bruce then permitted the sale to proceed. The judge testified that he did bid $720, acting for Brown; that he thought Brown would be willing to pay that much for the boat since he had given a check for that amount; that the Brown check was never indorsed and never cashed; that Brown has refused a return of his check.

Upon above state of facts, the trial court held that there was no payment of the judgment. In addition, that court further held that, even if the judgment was paid, the sale under the circumstances, was not void, and that Adams and Parker were innocent purchasers for value in good faith. Therefore he rendered judgment for them, awarding them the title and possession of said boat.

Upon appeal the Court of Civil Appeals, upon the same state of facts, held that the judgment was paid and satisfied before the sale; that therefore all further proceedings under the order of sale were absolutely void, and the sheriff's deed passed no title, "no matter how ignorant or innocent the sheriff may have been in making the sale or Adams in buying the boat." Thereupon the Court of Civil Appeals entered the following order:

"The judgment is therefore reversed, and this cause remanded to the trial court, with instructions to enter judgment for appellants, based on the trial court's valuation of the boat at $1,000, and damages at the rate of $6 per day, the judgment to be framed so as to give all the parties the relief to which they are entitled, where the plaintiff in sequestration recovers the title and possession of the property against the defendant, who has been holding it under a replevy bond. It is our further order that appellants recover from appellees all costs of this appeal, together with all costs in the trial court." See 238 S. W. 287.

The judgment of the Court of Civil Appeals is, in effect, a final judgment. It not only turns the boat over to Brown and Holstead, but will result in a judgment against the purchasers at the sheriff's sale in an amount equal to $6 per day since the boat was replevied. Parker, an absolutely innocent purchaser, is called upon not only to lose the boat for which he paid value, but to pay more than $6,000 for having, in good faith, replevied the boat and fought through the courts for his rights as he saw them.

Upon application to the Supreme Court, the petition of plaintiffs in error for writ of error was granted. We think the judgment of the district court should be affirmed for either of two reasons which we shall now discuss.

In the first place, all will concede that Parker has the title to this boat, unless the transactions between Brown and Weaver and Bruce constituted a payment and satisfaction of the judgment on the day before the sheriff's sale. The Court of Civil Appeals really does not materially differ with the trial court as to the facts in this connection. There could be no real difference. They are undisputed. The Court of Civil Appeals says, however, that, as things finally turned out, the check for $720 proved to be more than sufficient to pay the judgment and all costs; in fact, something more than $85 in excess of the amount required; that Weaver and Judge Bruce should have known what the final costs would be; that, if they made any mistake in computing the costs, they would be bound by such mistake. We cannot agree with such holdings. We know of no rule of law, and the Court of Civil Appeals cites no authorities thereon, which requires a plaintiff in judgment, or his attorney, to know what a sheriff will charge for caring for a motor boat during a period of more than two years. His charge for that service is not in the control of the plaintiff in judgment or his attorney. The Court of Civil Appeals seems to realize the force of this contention, but seek to avoid it by saying that Weaver himself was looking after the boat as the agent of the sheriff. That is true in part, but the undisputed proof shows that Weaver did not know what the sheriff would want for his responsibility in the premises. Weaver ex-

pected only that the sheriff would charge up enough costs to include something for his (Weaver's) part of the responsibility in looking after the boat for the sheriff.

As we read this record, Judge Bruce did all that could be expected of him by Brown. As a matter of law, Brown had much more at stake, and hence more reason for diligence than Weaver or Bruce, his attorney. The sale was advertised, and Weaver had only to wait until the next day for his money. Of course, Plunkett, or his assignee, Brown, had the right to pay the judgment, but we see no reason why Weaver should be compelled to release the court costs when he did not know what they would be, and could not know what they would be before the sale, even though he exercised ordinary care to ascertain it. Weaver was under the duty of releasing the amount due to himself, if so demanded, and he is charged by law only with knowledge of what that amount is. But Judge Bruce did not make any effort to shift upon Brown the burden of ascertaining what the court costs were and paying them off. He himself made every effort to ascertain whether or not the $720 would care for all of this expense. Just before the sale he failed to ascertain that it would. The afternoon before the sale he made an effort to return Brown his check and tell him to attend the sale himself. But Brown, apparently indifferent to the sale, had left town. He did this when the undisputed evidence shows that Weaver had told him the check was only being taken to Judge Bruce for instructions. Not knowing what Judge Bruce would decide as to the sufficiency of the check, Brown left town, and left no one to act for him. Had he evidenced even half as much interest in this matter as Judge Bruce did for him, he would have pursued this matter even to the point of attending the sale.

It would be a dangerous rule to permit a defendant in judgment, or his assignee, on the afternoon before a sheriff's sale, to tender a check for a certain amount to the plaintiff in judgment in full satisfaction of a judgment and costs, and then hold the judgment creditor responsible for not having sufficient "prophetic ken" to know what all the court costs will be. If that were the rule, a plaintiff in judgment would always proceed with a sale at his peril. The result would be that he would frequently call the sale off, desiring to be safe. He should not be called upon to so delay the collection of his judgment nor be forced to advertise again. Or, it might be that a plaintiff in judgment, as in the case at bar, would cease making every effort to keep the costs down as much as possible, preferring rather that they mount higher so as to exceed any amount theretofore tendered in payment thereof. For instance, the record in the case at bar shows that the sum of $720 would very probably not have sufficed to pay the judgment and all costs but for the vigor-

ous efforts on the part of Judge Bruce to keep the charges down in order that the original owner of the boat might receive something out of the sale. The evidence shows that the deputy sheriff desired to charge a great deal more than he finally agreed to take for his care of the boat. The record further shows that it was probably due to efforts of Bruce after the sale that the amount required was kept within the $720. An attorney could not be expected to take such an interest in a judgment debtor if it would result in voiding the sale and thereby injuring his client.

[1, 2] Briefly, we do not think the law requires a plaintiff in judgment to accept a certain sum in full payment of judgment and costs, when he does not know, and cannot know by the exercise of ordinary care before the sheriff's sale, that such sum is sufficient to pay same off in full. Applying this test to the case at bar, the judgment was not paid before the sale, and the sale was therefore clearly valid, and the purchaser thereat secured a good title to the boat. Therefore, for that reason, we think the judgment of the trial court should be affirmed.

But, even if it could be held that Brown fully paid off this judgment before the sale, we are still unable to agree with the Court of Civil Appeals in holding that the subsequent sale was absolutely void, "no matter how ignorant or innocent the sheriff may have been in making the sale or Adams in buying the boat." The court of Civil Appeals admits that this ruling is not free from difficulty, and that the authorities are divided on the point.

Whatever may be the status of the authorities in other states, we think the Texas cases follow a much sounder and more equitable rule, which has been stated by counsel for plaintiffs in error as follows:

"A sale by sheriff is not because of an alleged settlement of the previous day absolutely void, but at most voidable, which was made in good faith on his part in reliance upon the direction of the writ of execution and to a purchaser who is a stranger to the execution, and whose payment, made in good faith, is turned over to the defendant in execution after being applied pro tanto in satisfaction of the judgment, and the alleged settlement never having been fully executed by appropriation of its proceeds to the satisfaction of the judgments nor any balance paid to the defendant in execution. For, in such cases, equities exist in favor of the purchaser at such sale which require that the parties to the execution be made parties to any suit for annulment in order that such equities may be protected at least as against those of them who have no superior equities."

In support of aforesaid rule, those counsel cite Owen v. City of Navasota, 44 Tex. 520; Rippetoe v. Dwyer, 65 Tex. 705; Harrison v. Sharpe (Tex. Civ. App.) 210 S. W. 734; Am. & Eng. Encyc. of Law, vol. 25, p. 740; Tierney v. Frazier, 57 Tex. 442.

In the case of Owen v. City of Navasota, supra, the district court charged that, if an agreement to stay execution was brought to the notice of the sheriff of Grimes county the day before the sale, the sale would be absolutely void as against the defendant, and the purchaser at such sale, whether acting in good faith or not, took no title. Upon that charge, the purchaser at the sale lost his case in the trial court. The correctness of that charge was the "main question presented" to the Supreme Court. In passing upon it, that court, speaking through Judge Gould, said:

"We think the true construction of the agreement of July 24th is that the parties intended that there should be a stay of proceedings under the judgment until January 1, 1873. The terms used must be construed with reference to existing facts. The suit had already terminated in a judgment. The agreement is silent as to the principal debt, and provides only for interest up to January 1, 1873, and it seems unreasonable that it could have been designed to operate as a satisfaction or discharge of the debt or judgment. If the judgment had in fact been satisfied in full prior to the sale, there are cases of high authority which hold that the sale is absolutely void, and confers no title on the purchaser, although there was nothing of record to show the satisfaction, and the purchaser bought in perfect good faith. Hunter v. Stevenson, 1 Hill (S. C.) 415; Wood v. Colvin, 2 Hill (N. Y.) 566; Johnson v. Caldwell, 1 Conn. 622; Neilson v. Neilson, 5 Barb. 575; Myers v. Cochran, 29 Ind. 256; Trigg v. Ross, 35 Mo. 165.

"It is not our purpose to express any opinion on this proposition, as in this case it is not necessary that we should do so. In its terms it applies only to cases of judgment satisfied in full, and it is believed that its extension to other cases, apparently within its reach, has not been found. Walker v. McKnight, 15 B. Monr. 476; Freeman on Judgments, § 480.

"It must be conceded that the distinction between a satisfied judgment and one which is stayed, so far as it affects the authority to sell pending the sale, is not very apparent. The reason given, that without a valid subsisting judgment there is no power to sell, and that a purchaser under a power buys at his own risk, seems scarcely more applicable in the one case than in the other. But we have been cited to no authority which goes to the extent of holding that an agreement between the parties to stay a sale, though known to the sheriff, operates such a destruction of the authority to sell as to render a sale thereafter void. On the other hand, it has been held incompetent to impeach a sheriff's deed by parol evidence that the execution had been withdrawn and the levy abandoned. The remedy, it is said, would be not to attack the deed collaterally, but to apply to the court to set it aside. Jackson v. Vanderheyden, 17 Johnson, 167.

"In questions of this nature, affecting titles to lands, it is proper to follow in the beaten path of authority. But we are not disposed to go beyond the authorities in declaring public sales absolutely void because of matters not apparent of record.

"The general rule is believed to be that a purchaser at execution sale, who looks to the record and finds there a valid subsisting judgment authorizing the execution under which the officer proceeds, and who in good faith buys, pays the purchase money and received a deed, takes a title which is valid until the sale is set aside. Riddle v. Bush, 27 Tex. 677; Coffee v. Silvan, 15 Tex. 354; Sydnor v. Roberts, 13 Tex. 598; Rorer on Jud. Sales, § 836, and references.

"If the officer has either willfully or negligently proceeded to sell in violation of instructions, and as a result property is sacrificed, the parties are not without remedy. By motion in the court from which the execution issued, with notice to the purchaser, the sale may be, for good cause, set aside. McLean County Bank v. Flagg, 31 Ill. 295; Rorer on Jud. Sales, §§ 850, 851, 862, and authorities cited; Ayres v. Duprey, 27 Tex. 593; and see Bryan v. Bridge, 6 Tex. 141.

"The same end may be accomplished by an application to the equitable power of the court in which title under such a sale is set up, showing good equitable grounds for relief, and of course proffering to do equity. Loveland v. Morsell, 1 Hill (S. C.) Eq. 129; Ayres v. Duprey, supra; Chamblee v. Tarbox, 27 Tex. 145; Allen v. Stephanes, 18 Tex. 658.

"Whilst the remedies are thus ample to protect the parties to the judgment, and at the same time protect the bona fide purchaser, no good reason is perceived for introducing an additional element of uncertainty into titles derived through execution sales, by holding an agreement for a stay of execution not appearing of record to have the effect of rendering a sale under the execution absolutely void.

"Because of the error in the charge of the court, the judgment is reversed, and the cause remanded."

We have quoted this decision at some length, because it clearly shows that our Supreme Court laid down the very rule contended for by plaintiffs in error here, in a case very similar to the case at bar. In this case Judge Gould declared a contrary charge erroneous. The only difference is that in the instant case we have an alleged satisfaction of the judgment in full before the sale, whereas, in the Owen Case before Judge Gould, there was only an agreement to stay execution. But as Judge Gould so well says, the difference "is not very apparent." A payment in full or a stay of execution past a certain sale day should be equally effective in nullifying or not a particular sale.

[3] We are in hearty accord with Judge Gould when he says that he believes the general rule to be that a purchaser at execution sale "who looks to the record and finds there a valid subsisting judgment authorizing the execution under which the officer proceeds, and who in good faith buys, pays the purchase money and receives a deed, takes a title which is valid until the sale is set aside." This rule was quoted with approval in the recent case of Harrison v. Sharpe (Tex. Civ. App.) 210 S. W. 734.

The suit at bar is a collateral attack upon

the sale, and not an action to set it aside, where all interested parties are before the court, and where all possible equities could be adjusted.

Again, even if this were a direct attack upon this sale, our Supreme Court would follow the lead of the Owen Case, and protect Parker as an innocent purchaser, in our judgment. We say this because of that court's opinion in the cases of Tierney v. Frazier, 57 Tex. 441, and Rippetoe v. Dwyer, 65 Tex. 703. In the latter case, the evidence was conflicting as to whether the judgment had been paid. Judge Stayton said:

"The evidence as to the payment by Pressley is conflicting, his own testimony directly supporting the payment, and circumstantial evidence tending strongly to show that he never made the payment. If the payment was made, there is no evidence that Rippetoe had actual notice of it, or that he had notice of such facts as would put him upon inquiry, and operate as constructive notice, unless the following facts were sufficient for that purpose."

A reading of that case convinces us, beyond doubt, that Judge Stayton believed that payment of a judgment, not brought to the notice of the sheriff or the purchaser at his sale, would not have rendered the sale void.

The Court of Civil Appeals, in the instant case, is of the view that the alleged payment of the judgment stops all further process; that the execution becomes void for all purposes. And, yet, our Supreme Court has held, in the case of Tierney v. Frazier, supra, that an officer, acting in good faith, and under an apparently valid writ, would not be liable in damages for levying an execution under a satisfied judgment. Chief Justice Gould, in that case, lays down the following rule:

"Mr. Justice Cooley, in his book on Torts, takes a different view from Mr. Freeman of the question, 'Whether, when an officer knows that back of process fair on its face are facts which render it void, he is nevertheless protected in serving it.' After admitting that this is a point on which the authorities are not agreed, and referring to the authorities on each side, including a recent case in Illinois not cited by Mr. Freeman, and to which we have not access, he concludes thus: 'It seems to us, therefore, that the weight of authority and of reason is clearly in favor of the proposition that the officer may safely obey all process fair on its face, and is not bound to judge of it by facts within his knowledge, which may be supposed to invalidate it.' He cites Weller v. Gay, 24 Wend. 485; People v. Warren, 5 Hill 440; Wilmarth v. Burt, 7 Metc. 257; Twitchell v. Shaw, 10 Cush. 46; Watson v. Watson, 9 Conn. 140, 146 (citing Belk v. Broadbent, 3 T. R. 183–185; Gruman v. Raymond, 1 Conn. 40; Miller v. Davis, Comyn, 590); Cunningham v. Mitchell, 67 Pa. St. 78; Brainard v. Head, 15 La. App. 489; Wall v. Trumbull, 16 Mich. 228; Bird v. Perkins, 33 Mich. 28; Richards v. Nye, 5 Or. 382.

"Our examination of a number of these authorities (we have not access to all of them)

leads us to agree with Judge Cooley both as to the weight of authority and of reason."

The case last quoted from has recently been followed in the cases of Sanders v. Waghalter (Tex. Civ. App.) 192 S. W. 1085, and Branscum v. Reese (Tex. Civ. App.) 219 S. W. 873.

In the Tierney Case, defendant in judgment had exhibited a receipt in full to the officer, claiming it had been signed by plaintiff in judgment, as it really had. Under that case, and those following it as aforesaid, an officer, acting in good faith, will be protected in going ahead with a writ after the judgment is really satisfied. In other words, a writ is not absolutely dead for all purposes because the plaintiff in judgment had been paid. If the judgment, though paid, can be regarded as operative, so far as to justify the officer acting in good faith thereon, we can perceive no reason why it should not be equally as operative to support the title of a bona fide purchaser without notice. This same view is expressed by Chief Justice Green of the highest court in New Jersey in law cases in the case of Nichols v. Dissler, 31 N. J. Law, 461, 86 Am. Dec. 219, as follows:

"The doctrine is that the judgment is technically satisfied by a payment to the plaintiff. The power of sale is extinguished, and the execution, it is said, is functus officio. That places sheriffs, auditors in attachment, and all officers having the executions of writs in a remarkable dilemma. There was of record a judgment unsatisfied, and an order of the court that they should sell this land. If they refused to sell, they were punishable by fine and imprisonment; and if they made sale, their title is worthless.

"If a sheriff having a ca. sa. against the defendant arrests him, and the defendant says, 'I have paid the debt,' if he takes the defendant's word and discharges him, and it turns out that the debt is not paid, the sheriff is guilty of an escape, and is liable for the debt. If he refuses to discharge him and the debt is paid, he is guilty of false imprisonment.

"Or if the sheriff under a fi. fa. and levy is told that the debt is paid, he may be shown a receipt; the receipt may be a forgery. The sheriff is doubtless bound to give the defendant an opportunity to show payment and have satisfaction made. If he refuse to proceed, the court will amerce him in the whole amount of the debt and costs. If he does proceed, the defendant will sue him as a trespasser, and, if he sells the real estate, the title will be worthless. It is attempted to escape this dilemma by saying that the process may justify the officer, though it will pass no title to the land sold under it.

"But how can an extinguished power justify any act done under color of its authority? Voidable or irregular process may be relied on by way of justification. And if the judgment, though satisfied, can be regarded as operative, so far as to justify the officer, why may it not be equally operative to support the title of a bona fide purchaser without notice?

"The judgment should be affirmed."

In the case at bar, the officer making the sale was in much better position to go ahead with a sale than was the officer in the Tierney Case. Because, in the instant case, the record shows that the sheriff had not even a hint that the judgment had been paid.

We have found no decision of our Supreme Court based upon a ruling contrary to the decisions we have cited and where the rights of an innocent purchaser were at stake. So far as our Supreme Court has spoken, as we construe the decisions, an innocent purchaser at an execution sale will be protected in his title, even though the plaintiff in judgment has been paid, where he has no notice of such payment, of record, or otherwise, and no knowledge which should put him upon inquiry. This is as it should be, and is the rule announced in many jurisdictions. A judgment of a court and an execution thereunder, regular on their face, and unsatisfied of record, should justify a purchaser in buying at a sale thereunder. A purchaser should not be called upon to go beyond the records in his search for the status of an execution sale. On the other hand, a defendant in judgment is vitally interested in being released of record. It behooves him to be diligent and see that a sale is stopped or give actual notice at the sale of his alleged rights. In the sale in suit, neither the officers nor purchasers had any notice of the alleged payment of the judgment. The personal property offered for sale was in the possession of the officer. The attorney for the plaintiff in judgment was there. Everything appeared entirely regular. If there ever was a case where an innocent purchaser, under such a sale, should be protected, this is the case. Both of the lower courts have held that the purchaser at this sale could have done nothing more than he did do to see that he was getting a good title. The record shows that Weaver, Brown and Bruce kept their negotiations secret among themselves. If either of these parties was negligent to the other, then it seems to us that the remedy would better be by a suit among themselves for a redress of wrong rather than one to take the property of an innocent purchaser who could have done nothing more than he did do to protect himself at the sale. We cannot believe that this property should be taken away from this innocent purchaser.

The tremendous injustice of the rule laid down by the Court of Civil Appeals is apparent. It seems to us so much better to protect the innocent purchaser, subject of course at all times to an adjustment of all the equities surrounding the sale in a proper proceeding for that purpose.

The judgment of the district court works no injustice on anyone, unless it be on Brown, who deposited the $720 check. So far as Plunkett, the original owner of the boat, is concerned, he received about $30 more because of the fact that the sale proceeded. If Brown lost any profit, it was due to his own negligence, as we read this record, in leaving the scene of action when he knew nothing had been definitely settled. He seems to have no one to blame but himself, if he has lost a small profit in this transaction. At any rate, if he has any complaint at all against any one, it certainly should be against those who knew about his efforts to buy the boat, and who may have failed him in some respect in the performance of duty.

Counsel for plaintiffs in error contend that the Court of Civil Appeals erred in remanding this case with instructions to the trial court to enter judgment against the defendants for the definite sum of $6 per day for every day since they replevied the boat. It is contended that this question should be left open, in any event, for full development on another trial. In view of what we have already said, it is not necessary to pass upon this assignment.

For the reasons heretofore discussed, or either of them, we recommend that the judgment of the Court of Civil Appeals be reversed, and that of the district court affirmed.

CURETON, C. J. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.