### N. A. RIPPETOE ET AL. V. THOMAS DWYER.

(Case No. 1596)

1. LIS PENDENS—NOTICE—That *lis pendens* operates as notice, is true in all cases to which the rule is applicable; but the rule, which is necessarily arbitrary, has its foundation in a public policy which will not permit parties litigant to give to others, pending the litigation, rights to the property in dispute, to the prejudice of the opposite party, and the rule ought not to be given effect when the reasons which give it existence do not require its enforcement.

2. SAME—SUIT COLLUSIVELY PROSECUTED—An action collusively prosecuted, when all the parties to it know that there is no right to be enforced, does not operate as *lis pendens*, for the reason that no prejudice can result to the right of any one by not regarding it. (Citing Sugden on Vendors, 534; and Murray *v.* Ballou, 1 Johns. Ch. 571.)

3. TENANTS IN COMMON—INCUMBRANCES—NOTICE—If a purchase of property be made by two or more persons jointly, or as tenants in common, one of them will not be charged with notice of an incumbrance or conveyance affecting the title, known only to the other, unless the one having such knowledge has, by virtue of partnership relations, or some other means, been made the agent of the other. He who has notice of the incumbrance or conveyance will hold his title in subordination thereto, but he who has not such notice will obtain his title free from the claim to which his co-tenant is subjected. (Citing Freeman on Co-ten., 171; Parker *v.* Kane, 21 Wis. 27; Wiswall *v.* McGown, 2 Barb. 281; Snyder *v.* Sponsable, 1 Hill, 570.)

4. CHARGE OF COURT—NOTICE—See opinion in this case for a charge on the question of notice, held to be erroneous.

5. CASE DISTINGUISHED—The case of Littleton *v.* Giddings, 47 Tex. 117, distinguished.

APPEAL from Washington. Tried below before the Hon. James B. McFarland.

This was an action of trespass to try title, instituted, on February 22, 1873, by Thomas Dwyer, against A. H. Rippetoe, and his tenant, Julius Tamschowsky, to recover a part of lot forty-three, in the city of Brenham, and rents and damages.

A. H. Rippetoe died in April, 1881, and the appellants, N. A.

Rippetoe, surviving wife and sole devisee and legatee under the will of A. H. Rippetoe, deceased, and C. R. Breedlove, executor of the will, and Ida Luhn, joined by her husband, R. E. Luhn, and Albert, John, Maud, Harrison and Mary Rippetoe, children of decedent, were made parties defendant.

The cause was tried on September 16, 1882, and resulted in a judgment in favor of the plaintiff for the premises in controversy, and $1,664 rents, besides costs of suit. From this judgment the defendants have appealed.

This is the third time this cause has been before the supreme court. The report of the first decision will be found in 49 Tex. 498; the second decision was by the commissioners of appeals, and is not reported. The facts sufficiently appear in the opinion.

*Breedlove & Ewing*, for appellants, on the questions discussed in the opinion, cited: Fitch v. Boyer, 51 Tex. 337; McAnear v. Epperson, 54 Tex. 223. Murchison v. White, 54 Tex. 81; Crane v. Blum, 56 Tex. 325; Tennell v. Breedlove, 54 Tex. 540; Laughter v. Seela, 59 Tex. 177; Pierce v. Logan, Tex. Law Rep., vol. 1, p. 419; Freeman on Judg., secs. 132, 334; Rorer on Judicial Sales, secs. 466-469, and authorities cited; Lamothe v. Lipott, 40 Mo. 142; Smith v. Lewis, 3 Johns. 147; Kirkland v. Brown's Admr's, 4 Humph. 174; Robinson v. Zollinger, 9 Watts 170; Meuley v. Zeigler, 23 Tex. 88; Littleton v. Giddings, 47 Tex. 109; Wilson v. Williams, 25 Tex 66; Wade on Notice, p. 312, sec. 684; Abbott's Trial Ev. 188-190; Perry on Trusts, sec. 222.

*Sayles & Bassett*, for appellee, on the question of *lis pendens*, cited: Johnson v. Shaw, 41 Tex. 438, 439; Johnson v. Timmons, 50 Tex. 532, 533, 537; Johnson v. Shaw, 33 Tex. 590; 3 Sugden on Vendors 459; Freeman on Judg., sec. 202; Herman on Ex., sec. 331; Wade on Notice, secs. 341, 350, 357, 358, 359, 367; Murray v. Ballou, 1 Johns. Ch. 566; Fox v. Reeder, 28 Ohio St. 181; Lessee of Trimble v. Boothby, 14 Ohio, 109; Riggs v. Hanrick, Tex. Law Rev., vol. 2, p. 102; Kinney v. Vinson, 32 Tex. 125; Sorrel v. Carpenter, 2 P. W. 483; Parks v. Jackson, 11 Wend. 442; Miller v. Alexander, 13 Tex. 497.

That, when two or more are jointly interested in the purchase of a piece of land, notice to one of such parties of any matter in relation to that particular piece of land or transaction is notice to all, they cited: Littleton v. Giddings, 47 Tex. 109; Stockwell v. United States, 13 Wall. 531; Davies v. Harvey, Law Reps., 9 Q. B. 433; s. c., 9 Eng. Rep. (Moak's) 367.

STAYTON, ASSOCIATE JUSTICE.—Pressley bought the lot, of which that in controversy is a part, from Browning, on March 17, 1859, and, to secure the balance of purchase money, executed three notes, maturing January 1, 1860. Pressley conveyed to Jennings, February 19, 1861, and Jennings conveyed to the plaintiff, Dwyer, March 16, 1861. One of the notes executed by Pressley, being unpaid, suit was brought by its holder against Pressley, on February 29, 1860, wherein a foreclosure of the vendor's lien was sought. The deed to Pressley recited the execution of the three notes, but retained no express lien. He answered in the action against him, but, afterwards, withdrew his defenses, and, on April 21, 1860, judgment went against him for the sum due on the note sued upon, and foreclosing the vendor's lien.

On September 27, 1860, Pressley sued out a writ of error, and by this court the judgment against him was reversed, on February 18, 1867, and the cause remanded. When the cause returned to the district court, the petition was amended, a new party made, and Pressley again cited. He made no further appearance in the case, and, on October 17, 1870, judgment was taken against him for the debt, and foreclosing the vendor's lien on the lot, of which that in controversy is a part, and, on another lot, which was sold to Pressley at the same time, and on account of an insufficient description of which, the former judgment was reversed. The two lots were sold under this judgment, and under another against Pressley, rendered against him on another of the notes given by him for the purchase money, in an action instituted on March 18, 1868, and, at these sales, Rippetoe became the purchaser.

The plaintiff, Dwyer, alleges that pending the writ of error from the judgment rendered against Pressley, on April 21, 1860, Pressley settled that judgment by paying it in full to one of the attorneys, who represented the plaintiff in that cause, who agreed to take such steps as were necessary to protect him from further liability on account of that matter. He further alleges, that all these facts were known to Rippetoe before he bought.

The evidence as to the payment by Pressley is conflicting, his own testimony directly supporting the payment, and circumstantial evidence tending strongly to show that he never made the payment. If the payment was made, there is no evidence that Rippetoe had actual notice of it, or that he had notice of such facts as would put him upon inquiry, and operate as constructive notice, unless the following facts were sufficient for that purpose.

Giddings & Onins were the attorneys for the plaintiff in the suit

against Pressley, which it is claimed was settled by payment while pending on writ of error in this court. That firm was composed of J. D. & D. C. Giddings, and J. M. Onins. The payment is claimed to have been made to J. D. Giddings, who died before this defense was set up, and there is no evidence that either D. C. Giddings or J. M. Onins had any actual knowledge of any such settlement and payment.

Onins ceased to be a member of the firm of Giddings & Onins in 1861, and from that time until sometime in 1870 was a member of the firm of Swearingen & Onins.

Prior to the rendition of the two judgments, against Pressley, under which Rippetoe bought, the two notes on which they were rendered were transferred to a third person for the benefit of Swearingen & Onins, who paid to Giddings & Giddings the entire sum due on them, and assumed the payment of costs in the two cases, with the understanding that the two cases should proceed to judgment in the name of the original plaintiffs.

Prior to the rendition of the judgments, Swearingen & Onins sold to Rippetoe a one-half interest in the claims, for which he seems to have paid full value.

When the property was sold under the judgments, it was bought by Rippetoe for the benefit of Swearingen & Onins and himself.

Subsequently to this sale, Swearingen conveyed his interest in the property bought, to Onins, and as early as December, 1871, Giddings & Giddings bought a one-third interest in the property from Onins and Rippetoe.

After the notes of Pressley were transferred, the firm of Giddings & Giddings, although their names appeared on the docket as attorneys for the plaintiffs, ceased to control the cases, and they were prosecuted to final judgments by Swearingen & Onins.

As the plaintiff, Dwyer, bought before the suit was instituted against Pressley, on March 18, 1868, was brought, it is evident that not being made a party thereto, he is not affected by it.

He bought, however, while the first suit against Pressley was pending, and it is claimed that he is bound by the judgment rendered in it as a purchaser *pendente lite.*

Upon this theory, exceptions were urged to so much of his amended pleadings as set up the invalidity of the judgment against Pressley, resulting, as he claimed, from the fact that Pressley had fully paid the judgment then standing against him, while the cause was pending in this court.

Appellant also objected to evidence tending to show that the note

or judgment was so paid. The exceptions and objections were overruled.

The court, in effect, charged the jury, that if the indebtedness of Pressley was fully discharged, as alleged by Dwyer, before the final judgment against Pressley was rendered, and that of this fact Rippetoe had knowledge at the time he purchased at sheriff's sale, then they would find for the plaintiff.

All these matters are assigned as error, and the question is: If the facts alleged by Dwyer existed, is he bound by the judgment subsequently rendered against Pressley, as are, ordinarily, persons who purchase the subject-matter of litigation during its pendency?

The action against Pressley was one in which the plaintiff was seeking to enforce a lien on the land bought by Dwyer, who bought during it pendency, and was, therefore, one in which the rule, *lis pendens,* would ordinarily operate.

That *lis pendens* operates as notice, is held to be true in all cases to which the rule is applicable; but the rule, itself, has its foundation in a necessary public policy which will "not allow litigant parties to give to others, pending the litigation, rights to the property in dispute, so as to prejudice the opposite party."

The rule is necessarily arbitrary, and ought not to be given effect when the reasons, which give it existence, do not require its enforcement.

If the debt due by Pressley was actually paid, that ended the right of the plaintiff in the pending suit longer to prosecute it; for he no longer had any demand against Pressley, and a transfer, by the latter, of the property on which the former, prior to the payment, had a lien, could not prejudice any right of his.

Thus ended the necessity for the application of the rule for the protection of any party to the cause, and with this ended the right of the plaintiff in that cause to call for its enforcement.

Had the plaintiff, in the action pending when Dwyer bought, after his debt was fully paid, prosecuted it to final judgment, no one would contend that he could avail himself of the rule, *lis pendens,* and thereby have protection, had he caused the property to be sold under such a judgment and become the purchaser. The prosecution of the action, after full payment of the debt, as between such a plaintiff and Pressley, would be collusive, or fraudulent, and as against a purchaser from Pressley, whether before or after the settlement, clearly fraudulent. An action collusively prosecuted, prosecuted when the parties to it all know that there is no right to enforce, has never been held to operate as *lis pendens.* 2 Sug. on Vendors, 534; Murray *v.* Ballou,

1 Johns. Ch. 571. And so, for the simple reason that no prejudice can result to the right of any one by not so regarding it.

If Rippetoe had knowledge that the debt which Pressley once owed had been fully paid, then he can stand on no higher ground than would the person in whose name the action was prosecuted to final judgment. It is true that, as between the plaintiff in that action and Pressley, the judgment rendered is conclusive of the rights of themselves, for they were parties to it, and must be bound by it, unless it be in some lawful method set aside; but, not so, as to Dwyer, who was not actually a party to that action, and who is sought to be affected by a rule which cannot exist in this case, if the facts alleged by Dwyer be true.

There being no evidence of actual notice to Rippetoe that Pressley had paid to the attorneys the full amount of the judgment then standing against him, on the question of notice, the court charged the jury as follows:

" On this subject you are charged that all the members of a firm are held to have notice of any transaction with one member of the firm, relating to the business and within the scope of the partnership. So, where two or more are jointly interested in the purchase of a piece of land, notice to one of such party, of any matter in relation to that particular piece of land, or transaction, is notice to all."

There is no doubt of the correctness of the first proposition contained in this charge, and, under it, all the persons, members of the firm of Giddings & Onins, would be charged with notice of the payment made by Pressley to any member of the firm, if actually made. This results from the relationship of co-partners. Stockwell v. United States, 13 Wall. 545; Davies v. Harvey, 9 Q. B. L. R. 439.

The second paragraph of the charge is evidently based on the proposition that notice to Onins would be notice to Rippetoe. It is not shown that Onins had any actual notice of the payment claimed to have been made by Pressley; but, as before said, he was affected with notice of that fact by reason of his being a member of the firm of Giddings & Onins, if, in fact, the payment was made, as claimed.

Under such a state of facts, if it were admitted that persons buying property in such way as to become tenants in common, would each stand charged with notice of all facts known to another, even then, it seems to us, that Rippetoe would not be charged with knowledge of facts not actually known to Onins.

We do not, however, understand the rule to be that, in case of the purchase of property by two or more persons, each will be charged with notice of facts known to another.

There, doubtless, may be cases in which such a result will follow, as when one of the purchasers is made the agent of the others to consummate the purchase, and in the transaction of the business pertaining to his agency, acquires notice or knowledge of facts which vitiate the purchase; but "unless one has been made the agent of the other, by virtue of partnership relations, or of some other means, neither can, ordinarily, be charged and held accountable for the knowledge of the other. If an incumbrance, or conveyance, be in existence affecting the title to land, and a purchase be made by several jointly, or as tenants in common, those who have notice of the incumbrance, or conveyance, will hold their title in subordination to it, while those who did not have such notice, will obtain their title free from the claim to which their cotenants are subjected." Freeman on Co-tenancy, 171; Parker v. Kane, et al., 21 Wis. 27; Wiswall v. McGown, 2 Barb. 281; s. c. Hoffmann's Ch. 125; Snyder v. Sponsable, 1 Hill 570; s. c. 7 Hill 427; Wade on Notice.

The case of Littleton v. Giddings, 47 Tex. 117, seems to intimate a different rule, but in that case it was shown that the cotenant, upon whom notice of a prior conveyance was sought to be fixed, had notice of such facts as put him upon inquiry.

Rippetoe died before the last trial of this cause, but had testified on a former trial, in which a statement of facts was made up, signed by counsel for the respective parties, and approved by the court.

On the trial, the court permitted the evidence of Rippetoe, as given on the former trial, to be read from that statement, and this is assigned as error.

It does not become necessary to rule on the admissibility of this evidence, as it was not of a character to prejudice the right of the appellant.

There may be cases in which, in the absence of better testimony, such evidence would be admissible.

For the error in the charge of the court, the judgment will be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered March 19, 1886.]