**DONLEY et al. v. ARDREY et al.** (No. 8955.)

(Court of Civil Appeals of Texas. Dallas. April 12, 1924. Rehearing Denied May 10, 1924.)

**1. Appeal and error ⬤⟳931(3)—Necessary facts presumed found, in absence of special findings.**

Where cause tried before court comes up on appeal without specific findings of facts, every fact finding support in evidence necessary to sustain judgment below must be considered as found by trial court.

**2. Partnership ⬤⟳159—Knowledge of partner's limited authority imputed to plaintiffs.**

Where plaintiffs knew that W., their partner in oil development work, was interested as part owner with defendants in leases, and that in contracting with himself to drill wells, he was making contract that in law was adverse to defendants, such dual capacity charged plaintiffs with knowledge that general power he had was canceled unless special permission was given to act, and placed plaintiffs on inquiry as to whether W. was specially empowered to contract with firm of W. and plaintiffs, and, since W. knew of limitations on his authority, such knowledge is imputed to plaintiffs.

**3. Partnership ⬤⟳160—Parties knowingly contracting with partner in excess of authority look to him for remuneration.**

Where one owning half interest in oil lease, and authorized by other owners to do certain development work, entered partnership agreement with plaintiffs, and contracted with such firm to drill other wells, no recovery could be had therefor from other owners of lease; plaintiffs looking to one with whom they contracted for remuneration.

Appeal from District Court, Dallas County; Royal R. Watkins, Judge.

Action by C. W. Donley and others against Herbert D. Ardrey and others. Judgment for defendants, and plaintiffs appeal. Affirmed.

W. H. Graham, of Dallas, for appellants.

Locke & Locke and Paul Carrington, all of Dallas, for appellees.

JONES, C. J. This appeal is from a judgment in the district court of Dallas county adverse to appellants, who had sued appellees for an indebtedness of $25,608 alleged to have been due the firm of Wagner & Donley Bros. for the drilling of wells Nos. 4 and 5 on a tract of 94 acres of land in Eastland county. Appellants asserted a one-half interest in said indebtedness, and sought to recover the other one-half interest for the estate of their then deceased partner, Wagner. The following general statement will be sufficient to show the general conditions under which this litigation arose:

The Texas Pacific Coal & Oil Company was the owner of an oil and gas lease on the Dan McCleskey 9-acre tract of land in Eastland county, Tex. There had been drilled on this land one well, down near the oil sand, when said company on January 25, 1919, sold an undivided one-half interest in its lease to R. L. Steiner; the consideration to be paid by Steiner being $100,000 in cash and an additional $50,000 to be paid out of oil as same was produced by development of the property. This sale was to be consummated within 15 days from said date by the payment of the cash consideration by Steiner and by the delivery to him by the company of an assignment of the said one-half interest. There was a further consideration that the cost of the development of the property was to be borne by the assignee. This developing of the lease was to begin within 30 days by the placing of two standard rigs in operation on the land and to keep them in operation until 2 wells, including the one that was nearing completion, should be drilled. The maximum number of wells that could be drilled was 11, but the conditions of the lease would be satisfied by the completion of the said 2 wells.

At the time the said Steiner contracted to purchase this lease he was in partnership with one Warren Wagner under the firm name of Wagner & Steiner, and they were engaged in the production, piping, and marketing of oil in the oil fields of Eastland county and its vicinity. The transaction in question, however, was not a partnership transaction, but was undertaken in the first instance by Steiner alone, as a side matter, Steiner, when he secured the said contract for the assignment of the said lease, interested the other appellees in his undertaking, and also interested his partner, Wagner; he being an experienced driller of oil wells.

The written lease to the undivided one-half interest in the property was executed to Steiner by the Texas Pacific Coal & Oil Company on March 25, 1919. Previous to this Steiner had executed assignments of his

entire interest in such lease in terms of percentage, as follows: To Warren Wagner, 50 per cent.; to Herbert D. Ardrey, individually, 10 per cent.; to Herbert D. Ardrey, as trustee for Steiner, 15 per cent.; to Herbert D. Ardrey, as trustee for A. Ragland, 5 per cent.; to L. R. Munger, 7½ per cent.; to C. H. Munger, 5 per cent.; and to J. Fred Schoellkopf, 7½ per cent.—making the total of 100 per cent. These parties paid their proportionate share of the $100,000 cash consideration. On April 9, 1919, Warren Wagner, as the owner of one-half of this assignment, transferred 1 per cent. of his interest to Frank J. Burk and 1 per cent. to C. L. Wallace.

It was understood between these various owners of this assignment that Wagner was to take charge of the development of the property, at least so far as the placing of the two standard rigs on the property and the drilling of the two wells made necessary by the terms of the lease were concerned. It was not understood that Wagner was to have a free hand in the development of the property, other than to drill the two said wells. In a meeting of the various owners of this assignment it was estimated that $8,000 would be sufficient to complete well No. 1, and it was believed that the sale of the production of well No. 1 would be sufficient, without an extra outlay of money, to complete well No. 2, and that the sale of the production from these two wells would be amply sufficient to pay for whatever future development of the property should be determined upon. The parties, however, agreed to raise at once $12,000, by each contributing to this sum in proportion to his interest in the lease, and that this sum of money should be placed in a bank to the credit of Ardrey as treasurer for the owners of the lease. It was to be checked out by Wagner as needed in the work undertaken by him on the two wells, the completion of which would fulfill the terms of the contract between Steiner and the said coal and oil company.

Work was at once begun by Wagner, with the result that well No. 1 was completed in a short time and at a cost of from $2,000 to $2.500, but the entire $12,000 was in a very short time paid out on checks issued by Wagner. This well, though announced by Wagner to be an 800-barrel well, was shown by the pipe line returns to have a production of from 200 to 300 barrels a day.

Immediately after the completion of the first well, Wagner, without consulting the other owners of the lease, and without informing them of his intention, proceeded to drill, or caused to be drilled, wells Nos. 2, 3, and 4, and later 5, 6, and 7, and appropriated all the oil from well No. 1 to his own use and made no accounting to the other parties therefor, and refused them any information concerning the extent of the production other than his statement of the pro-

duction of well No. 1 at the time it was brought in. Attempts were made by the other owners of the lease to secure a statement of Wagner of what he was doing and of what the production amounted to on the property, but this resulted each time in a failure. The appellees, as the other owners of the lease with Wagner, desired to form a corporation to which all their interests should be conveyed, but did not succeed in interesting Wagner in this proposition. Wagner, however, began to call· for money, and to complain that the burden of this entire property had been thrown upon him, and suggesting that some arrangement would have to be made to assist him in this matter. This resulted in a conference being held in Dallas, at which Wagner and the others were present. At this conference, however, nothing was accomplished. Wagner was not given any money by the other parties, and they were rendered no statement, either of the oil that had been produced or the development that had been undertaken.

Finally, however, and on May 25, 1919, on the occasion of the visit of some of the owners of this lease to the oil field, an agreement was reached between Wagner and· the other parties, who are the appellees in this cause. It was estimated that $88,000 would pay all the indebtedness incurred by Wagner on all the development work that had been done and which would be done up to June 1, 1919. With this estimate as a basis, it was agreed by the parties that a corporation would be formed, with a capital stock of $200,000, to be represented by the $100,000 that had been paid for the lease, the $12,000 that had been paid in for development purposes, and the $88,000 to pay all the outstanding indebtedness; that all development by Wagner was to cease, and no further development made, except by authority of the corporation. An attorney who accompanied these parties returned to Dallas and at once prepared all the papers necessary for the formation of the corporation and sent them to Wagner for his execution. This he did not do, and the corporation was never formed. At the time of this meeting and agreement, on May 25, 1919, well No. 4 had been begun; no work, though, had been begun on well No. 5.

Wagner formed the partnership of Wagner & Donley Bros., consisting of himself and the three Donleys, who are appellants in this cause. Purporting to act for the owners of the lease, Wagner contracted with the firm of Wagner & Donley Bros. for the drilling of wells Nos. 4 and 5. Wagner did this without the assent or knowledge of the other owners of the lease, and without authority to make this development or to incur this indebtedness. Neither of the Donleys, however, had actual knowledge of any lack of authority or power on the part of their partner, Wagner. They did know, however, that

he was a part owner of the lease, and, if the purchase of the lease and the development of same by the owners constituted these owners a partnership, in the absence of the execution of any partnership agreement, the Donleys knew that Wagner was a member of that partnership. Well No. 4 was completed by Wagner & Donley Bros. after the agreement of May 25th, and well No. 5 was begun after said agreement, but was never completed. Well No. 4 was not a producer, and well No. 5, of course, was not a producer. The parties to the lease received no benefit whatever from this work. This suit by Donley Bros. is for one-half of the cost incurred by the firm of Wagner & Donley Bros. in drilling of wells Nos. 4 and 5, together with a charge for delay in the execution of the work on well No. 5.

For the purpose of raising the sum of $88,-000 to carry out the agreement of May 25, 1919, appellees at once paid in their share of said sum of money, and this sum was checked out and appropriated by Wagner. This agreement not being consummated on account of the failure of Wagner to perform his part of same, the appellees, on July 28, 1919, filed suit against Wagner, Burk, and Wallace in the district court of the Fourteenth judicial district, praying for an accounting and for the appointment of a receiver. Two receivers were appointed and work on the development of the property by Wagner ceased. On April 17, 1920, appellants C. W. Donley and W. M. Donley filed suit in the Sixty-Eighth district court of Dallas county against these appellees and Wagner, Burk, and Wallace, and also against R. L. Hunt, one of the two receivers, in which they alleged an oral agreement with Wagner by the firm of Wagner & Donley Bros. for the drilling of the said wells 4 and 5. In this suit they sought to recover in their own right one-half of the sums alleged to have been due them under the contract made by the firm with Wagner for drilling the said wells, alleging that one-half of the contract price was owned by Warren Wagner, the other partner in the business. While this litigation was pending, Warren Wagner died, and by an amended petition, filed July 8, 1921, the same parties, as plaintiffs, made Norma Wagner, the surviving widow and administratrix of his estate, a party defendant to said suit. In this amended petition recovery was sought as in the original petition on an express oral contract made with Wagner. On September 13, 1921, the same plaintiffs filed their third amended petition, again alleging an express oral contract, but alleging in the alternative the right of recovery on quantum meruit.

On June 26, 1922, the same plaintiffs filed their fourth amended petition, again declaring substantially as in the other pleadings on the oral contract, and on the alternative plea of quantum meruit; but in this plead-

ing they seek to recover the entire indebtedness, one-half of which was for the benefit of the estate of Warren Wagner. In this petition it is alleged that appellees knew that they were doing the work of drilling, and that, so knowing, each ratified and confirmed all the acts of the said Warren Wagner in so contracting with them. By trial amendment J. F. Donley made himself a party plaintiff to the suit, alleging that he was equally interested with the other two plaintiffs, but that he was a dormant or silent partner, and that his partnership with the others had never been disclosed. The suit filed by appellants was transferred to the district court of the Fourteenth judicial district by appellees without the consent of appellants, and consolidated with the receivership suit. Before the trial, however, and at the instance of appellants, the district court severed the two suits, and the case was tried separate and apart from the receivership proceedings.

Appellees answered by general demurrer and general denial, and special denial under oath of partnership or appointment of Wagner as agent to make the contracts alleged; an allegation of the settlement made with Wagner on May 25, 1919, wherein it was agreed that the payment subsequently made of $88,-000 was in full for all development to June 1, 1919, and that it was further agreed that nothing else should be done thereafter; allegations that the alleged contracts were made and alleged labor and materials furnished after this agreement was entered into and with knowledge on the part of appellants of said agreement; allegations that the alleged contracts were made by Warren Wagner with a firm of which he was a member, and in which he had a personal interest and profit adverse to appellees, and that the appellants knew such fact; allegations that appellee had no information concerning such alleged contract, and at no time authorized or requested plaintiffs to furnish any labor or material; and allegations setting up the two-year statute of limitation as a bar to the said suit.

When the case was called for trial, appellants dismissed their cause of action against Burk and Wallace, and also against Hunt as receiver and against Mrs. Norma Wagner in her capacities other than as temporary administratrix of the estate of Warren Wagner. After the introduction of evidence, and before argument, appellants dismissed their suit as against Mrs. Norma Wagner as temporary administratrix, leaving appellees as the sole defendants in said suit. The case was tried before the court, and judgment entered in favor of appellees, who were defendants in the suit below. Neither party requested findings of fact and conclusions of law, and none were filed.

It is contended by appellants that Wagner and appellees were partners in the enterprise

of developing the lease, and that Wagner, as such partner, had the power to bind appellees in the contract entered into between Wagner, as representative of the partnership, and Wagner & Donley Bros., or that Wagner and appellees were tenants in common in the ownership of the lease, and that Wagner was the duly authorized agent of all of the owners, and as such was empowered to contract for the development of the lease, and that the contract entered into between Wagner, as such agent, and Wagner & Donley Bros., was within the scope of such agency and binding upon appellees, or, if mistaken in their claim that there existed a valid oral contract for the drilling of wells Nos. 4 and 5 on the lease, that nevertheless, at the instance and direction of Wagner, one of the partners or one of the tenants in common, the firm of Wagner & Donley Bros. performed the work of drilling said wells, and that, as appellees and Wagner received the entire benefit of such work, they were bound for the reasonable value thereof, which value is alleged to be an amount equal to the alleged contract price, and that they should be allowed to recover on quantum meruit.

In conformity with these contentions, appellants made appropriate assignments of error, duly supported by proper propositions of law. It is not deemed necessary to discuss these various assignments of error in detail, for the general principles of law herein discussed are applicable to each of them.

[1] The cause being tried before the court and coming to this court without specific findings of fact, every fact finding support in the evidence necessary to sustain the judgment rendered below must be considered as found by the trial court. The facts are undisputed that Wagner, at the time this work was done, owned a 48 per cent. interest in this lease, and that appellees owned a 50 per cent. interest in same; that in order to meet a condition in the terms of the lease assigned to Steiner, and subsequently assigned by him to Wagner and appellees, it was necessary to finish the drilling of the well already begun and to complete the drilling of one other well, and that the performance of this condition was intrusted by the owners of the lease to Wagner. With the work on these two wells this suit is not concerned.

The undisputed evidence further shows that for the purpose of drilling wells Nos. 4 and 5, which work forms the basis of this suit, Wagner formed a partnership between himself and appellants, in which partnership Wagner had a one-half interest, and appellants together had the other one-half interest, and that well No. 4 was not a producer, and therefore of no value to the lease owners; that well No. 5 was not completed before work was stopped under the appointment of a receiver, and that from well No. 5 the leaseholders secured no benefits. The undisputed evidence further shows that neither of appellees had any direct dealings with appellants, either before or during the time the work was being performed, and that on the 25th day of May, 1919, an agreement was consummated between appellees and Wagner as to the sum of money necessary to be paid to settle for all improvement work that had been made on the lease up to and including June 1, 1919, and that no other work towards developing the lease was to be done or contracted for except through a corporation whose organization was then contemplated.

It is concluded, from evidence that is not undisputed, in behalf of the judgment entered by the trial court, that the power given to Wagner in the matter of development of the property was limited to a completion of well No. 1 and to the drilling of well No. 2, and that this work was to be done with the initial $12,000 paid in and the income to be derived from well No. 1 after its completion, and that Wagner did not have the actual power to make any other improvement and bind appellees for the cost thereof; that after June 1, 1919, Wagner not only had no actual power to incur any costs whatever in the way of improving or developing the property, but was positively forbidden to do so. It is likewise concluded that appellees did not know of appellants' interest in the drilling of wells Nos. 4 and 5, but believed that all improvements were being done alone by Wagner; and that the greater part of the cost of the drilling of well No. 4 and the entire cost of drilling well No. 5 were incurred after June 1st. It is also true that the undisputed evidence shows that appellants had no actual knowledge of the limitation on Wagner's power above stated. Of course, if appellants had known that Wagner, though purporting to act for appellees as well as himself in contracting for this work, exceeded his authority, they could not hold appellees for this work, either by means of the contract or by means of their plea of quantum meruit, regardless of whether appellees and Wagner were partners or tenants in common.

[2] It therefore follows that the result of this appeal rests upon an answer to the question as to whether appellants were deemed in law to have had knowledge of the limitations on the authority of Wagner to do the work of developing the lease. Appellants knew that Wagner, their partner in this work, was interested as a part owner with appellees in the lease. They also knew that, in contracting with himself for the expenditure of the large sum of money necessary to drill wells Nos. 4 and 5 on this property, he was making a contract that in law was adverse to the interest of those for whom he purported to act; for, as such contractor, it was to his interest to pay a high price for the work, while it was to the interest of appellees for the work to be secured at the lowest possible price. This dual capacity assumed by Wag-

ner charged appellants with the knowledge that any general power he may have had from appellees to enter into this contract was thereby canceled, unless special permission was given him by appellees to act for them, notwithstanding the dual capacity he occupied. This condition at once placed appellants upon inquiry to find out whether Wagner was specially empowered to make these contracts with the firm of Wagner & Donley Bros. The record fails to disclose that appellants even attempted to find out the existing facts as to the authority of Wagner to make such a contract.

Again, Wagner, appellants' partner in business, of course knew the limitation of his authority, and this knowledge the law imputes to them. Rippetoe v. Dwyer, 65 Tex. 703; Smith v. Adams, 4 Tex. Civ. App. 5, 23 S. W. 49; Morris v. Gwaltney (Tex. Civ. App.) 215 S. W. 473; Nabours v. McCord, 100 Tex. 456, 100 S. W. 1152; Binder v. Millikin (Tex. Civ. App.) 201 S. W. 239; Gen. Bonding & Cas. Ins. Co. v. McCurdy (Tex. Civ. App.) 183 S. W. 796; Austin v. Rupe (Tex. Civ. App.) 141 S. W. 147; Mechem on Agency (2d Ed.) vol. 1, §§ 177, 745, 1188, 1189, 1190; Pomeroy's Equity Jurisprudence (4th Ed.) vol. 3, § 1077. We therefore hold that Donley Bros. were charged with the knowledge of the limitation on the authority of Wagner to contract for the expenditure of money in the development of this lease.

[3] The instant case, then, in reality, is one in which appellants are seeking to hold appellees bound by a contract entered into with them by one whom they knew was exceeding his authority when he executed the contract in behalf of appellees. It is elementary that no recovery can be had under such conditions, and that appellants must look alone to the one with whom they contracted for their remuneration.

It follows from the above discussion that all of appellants' assignments of error must be overruled, and an affirmance ordered in this case.

Cause affirmed.