## W. A. NABOURS ET AL. V. A. P. McCORD ET AL.

### No. 1624.     Decided April 3, 1907.

**Trustee—Interest in Sale—Guaranty to Purchaser.**

Where the assignee of an insolvent sold the trust property to a purchaser, to whom, without the consent or knowledge of the beneficiaries, he made a guaranty, inducing the purchase, that he would furnish a purchaser for a part of the property sold, at a named price, which guaranty he fulfilled, on demand of the purchaser, by himself taking the property at that price, the assignee became, by such guaranty, personally interested in the sale, his interest being hostile to the beneficiaries, and they could elect to avoid the sale or to sue for damages, though the sale was for a fair price, the trustee acted in good faith and for the interest of the beneficiaries, and without intent at the time of making the guaranty, to become the purchaser himself.     (Pp. 460–462.)

Question certified from the Court of Civil Appeals for the Third District, in an appeal from Milam County.

The case, on a previous appeal, is reported in 97 Texas, 526; and in the Court of Civil Appeals in 75 S. W. Rep., 827; 82 S. W. Rep., 153, 193, 661.

*D. W. Doom, A. J. Harris, W. K. Homan, Hefley, McBride & Watson* and *Etheridge & Baker,* for plaintiffs in error.—The conveyance by Lawrence to McCord of the property involved in this suit was the direct result of the negotiations between McCord and Lawrence prior to the conveyance by the assignees to Lawrence, and the acquisition by McCord from Lawrence of the properties involved herein, under the circumstances of this case, as matter of law, was as to the plaintiffs invalid. Nabours v. McCord, 97 Texas, 526; Nabours v. McCord, 75 S. W. Rep., 827; Nabours v. McCord, 82 S. W. Rep., 153; Nabours v. McCord, 82 S. W. Rep., 193; Nabours v. McCord, 82 S. W. Rep., 661; Haswell v. Blake, 14 Texas Ct. Rep., 394; McIlhenny v. Todd, 71 Texas, 400; Keller v. Smalley, 63 Texas, 512; Moody v. Carroll, 71 Texas, 146; Miller v. Rich, 68 N. E. Rep., 488; Coffee v. Ruffin, Exr., 4 Cold. (Tenn.), 487; Knapp v. White, 23 Conn., 529; Abbott v. American Hard Rubber Co., 33 Barbour, 578; Obert v. Obert, 10 N. J. Eq., 98; James v. James, 55 Ala., 525; Wing v. Hartupee, 122 Fed. Rep., 897; Boynton v. Brastow, 53 Me., 363; Cook v. Berlin Woolen Mill Co., 43 Wis., 433; Voltz v. Voltz, 75 Ala., 555; Michoud v. Girod, 4 How., 503; Foxworth v. White, 72 Ala., 224; Red Jacket Tribe v. Gibson, 12 Pac. Rep., 127; Strong v. Eldridge, 36 Pac. Rep., 696; Sands v. Cooke, 46 N. Y., 564; Johnson v. Kay, 8 Humph. (Tenn.), 142; Carter v. Palmer, 8 Clark & Finelly, 657; s. c., 8 Eng. Rep. (Full Reprint) 256, et seq.; Mullen v. Doyle, 23 Atl. Rep. (Pa.), 807; Smith v. Isaac, 12 Mo., 106; Creveling v. Fritts, 34 N. J. Eq., 134; Culver v. Culver, 11 N. J. Eq., 215; Williams v. Scott, L. R. A. Cas. (year 1900), 499; Cook v. Collinridge, Jacob, 607; s. c., 19 Eng. Rul. Cas., 634; DeChambrun v. Cox, 60 Fed. Rep., 471; Minneapolis Trust Co. v. Menage, 76 N. W. Rep., 195; 2 Perry on Trusts (4th ed.), sec. 786a; Dunlap

·v. Beckes, 23 Kan., 154; In re Taylor Orphan Asylum, 36 Wis., 552; Price v. Thompson, 84 Ky., 227; Staats v. Bergen, 17 N. J. Eq., 558; Bassett v. Shoemaker, 20 Atl. Rep., 52; Harrison v. McHenry, 9 Ga., 164; 2 Pomeroy's Equity (3d ed.), secs. 957, 958.

*Henderson, Streetman & Freeman, Monta J. Moore* and *Crane & Gilbert,* for defendants in error.—When the assignees sold and delivered the property of the assignor's estate they no longer occupied the position of trustees in respect thereto, and if the sale was made in good faith, without any express or implied understanding, Captain McCord was authorized by law to acquire the property from the purchaser for himself. Wortman v. Skinner, 1 Beasley (N. J. Eq.), 372; Boehlert v. McBride, 48 Mo., 505; Johnson v. Kay, 8 Humph. (Tenn.), 142; Cook v. Berlin Woolen Mills, 43 Wis., 433; Foxworth v. White, 72 Ala., 224; Payne v. Flournoy, 29 Ark., 500; West v. Waddill, 33 Ark., 578; Munn v. Burgess, 70 Ill., 604; Welsh v. McGrath, 59 Iowa, 519; Staples v. Staples, 24 Gratt. (Va.), 225; Wayland v. Cranks, Ex'r, 79 Va., 602; Welsh v. McGrath, 59 Iowa, 519; Wing & Evans v. Hartupee, 122 Fed. Rep., 897.

BROWN, ASSOCIATE JUSTICE.—Certified question from the Court of Civil Appeals for the Third Supreme Judicial District as follows:

"The Court of Civil Appeals of the Third Supreme Judicial District of Texas certifies that the above styled and numbered cause is now pending in this court, and that the hereinafter questions certified arise upon the record of the case, and as preliminary to the questions certified, we make the following statement:

"The plaintiffs in error, as creditors of the Milam County Bank and W. F. and M. F. Crawford, brought this suit against A. P. McCord, one of the assignees of the estate of Crawford and Crawford, and the Milam County Oil Mill Company to recover a part of the assigned estate or its value from McCord. The case was submitted in the court below to a jury under a full and comprehensive charge presenting the issues stated in the pleadings, and verdict and judgment were in favor of defendants in error.

"It is substantially alleged by the plaintiffs that the property of Crawford and Crawford and the Milam County Bank was transferred to defendant McCord and Henderson under a deed of assignment for the benefit of the plaintiffs and accepting creditors; that during the time of the pendency of the trust, and while McCord and Henderson were in possession of the property as assignees, a sale of the property in question was made by them to one C. W. Lawrence; that the purpose and object of the sale was that McCord should directly or indirectly become the purchaser of the property and acquire its title; that McCord did, within a short time after the sale to Lawrence, acquire by conveyance from Lawrence a title to the property; that such conveyance was made to McCord while the title to Lawrence was executory and *in fieri;* and also that McCord prior to the sale, guaranteed to Lawrence, as an inducement to .the purchase by him, that he, McCord, would guarantee a purchaser of the property from Lawrence if the latter desired to sell; that such guarantee was made with the purpose and

object of permitting McCord to acquire the property. Henderson is not charged to be a participant in the alleged fraud, but it is asserted that he merely negligently and by want of attention to the administration of the trust, permitted McCord to bring about this state of affairs.

"These issues were submitted to the jury, and, as before said, the finding was against the contention of plaintiffs in error; and, the evidence, except as otherwise stated in our findings of fact, justified the verdict of the jury.

"The property or its value sought to be recovered, is described as follows: An undivided one-half interest in certain land notes of Preston Steele, secured by a vendor's lien on certain land out of the Samuel Jones League in Milam County; an undivided two-thirds interest in the W. B. Burton survey of land in Jefferson County; 242 shares of the paid up capital stock of the Milam County Oil Mill Company, of the face value of $24,200.

"We find the following facts: W. F. and M. F. Crawford on the 6th day of March, 1896, executed to T. S. Henderson and A. P. McCord, as assignees, a general deed of assignment of all of their property for the benefit of their creditors, and that said Henderson and McCord immediately accepted and qualified as such assignees and took possession of the property herein sued for, with the other property of the assignors. On the 5th day of May, 1897, the assignees sold to Lawrence the property in controversy. The sale was private and was made on credit, with lien on the property waived by the assignees. The consideration agreed to be paid by Lawrence for the property in controversy was $10,500. There is evidence to the effect that the price obtained was the fair value of the property; on the other hand, there is evidence tending to show that the property was worth more than Lawrence agreed to pay for it. Lawrence at the time he purchased this property also purchased from the assignees the remaining assets of the estate, upon which a lien was retained to secure the purchase money. This latter property, though, is not involved in this controversy. The evidence fails to disclose any satisfactory reason why a lien was not also retained upon the property in controversy to secure the purchase money promised to be paid by Lawrence. It appears from the facts that while Lawrence desired to purchase some of the property not involved in this suit, he did not desire to purchase the property in controversy, and did not purchase the same until after the assignee, McCord, agreed to guarantee to find a purchaser at the price Lawrence agreed to pay for same, provided Lawrence wanted to sell. Upon the faith of this guaranty, Lawrence purchased the property in controversy. The guaranty was made by McCord to one Ralston, who was then acting for McCord, who communicated to Lawrence the terms proposed by McCord. Lawrence had no actual knowledge that McCord was the guarantor, but he supposed that the proposition came from him. At the time that Lawrence purchased he expected that the guarantor would have to comply with his contract of guaranty, and did, about the 20th of May, 1897, call upon McCord, the guarantor, to comply with the promise made, which promise was executed, not by McCord producing someone else as a purchaser, but he himself became the purchaser from Lawrence, who thereafter executed to McCord transfers to the property in ques-

tion. The purchase price originally promised by Lawrence was never paid by him, but was paid by McCord when he acquired the title from Lawrence, and which was accounted for to the creditors of the assigned estate, and during all of this time McCord was still the assignee, burdened with some duties relative to the administration of the estate.

"We may assume that the facts justify the conclusion that there was no agreement between Lawrence and McCord that the purchase by the former was for the benefit of the latter, and that McCord when he sold, had no intention or desire to become the purchaser of the property, or to acquire it by virtue of the proposed guaranty, still the only conclusion that can be reached from the evidence is that the guaranty made by McCord was the inducement to the purchase by Lawrence, and that at that time the parties must have believed that the contract of guaranty would have to be performed. And it is certainly the case, as indicated by McCord's evidence and his conduct, that at least as a man of ordinary prudence and intelligence, he must have believed that he would be called upon to furnish a purchaser for the property, and that by virtue of the contract of guaranty, he might during the pendency of his trusteeship acquire from Lawrence a title to the property. And the only conclusion justified by the evidence is that the title he so acquired was by reason of the contract of guaranty which he was required by Lawrence to perform. It also appears from the evidence that, as between Lawrence and the assignees, except as to the payment of the purchase price, the sale was executed."

We here copy the amended statement as filed by the Court of Civil Appeals.

"The deed of assignment mentioned in the original certificate is a statutory one for the benefit of accepting creditors, among whom are the plaintiffs in error, and was executed on the 16th day of March, 1906, instead of the 6th day of March, as stated in the original certificate.

"In the original certificate it is stated that 'the guaranty was made by McCord to one Ralston, who was then acting for McCord who communicated to Lawrence the terms proposed by McCord.' In lieu of this, we make the following finding: Ralston was interested with Lawrence in the purchase of the property sold to Lawrence by the assignees. Lawrence, before the purchase of the property, objected to buying that in controversy on the ground that he was doubtful if in the sale of it to others he could sell it for as much as he was to pay for it. Ralston communicated to McCord this fact. Thereupon McCord made to Ralston the guaranty, as stated in the original certificate, the terms of which guaranty were by Ralston communicated to Lawrence. We find that before the sale to Lawrence, a committee had been appointed by the creditors of the assigned estate, and that this committee, together with the assignees, made up a list of the property, including the property in controversy and valued the items separately; and that the amount paid by Lawrence for the property in controversy was the value of said property as fixed in said list; and that both the assignees and the creditors had for sometime before the sale to Lawrence been attempting to sell the property at these prices, and had been unable to do so.

"The evidence, as supported by the verdict of the jury, authorizes

the conclusion that McCord had no express purpose or intention of acquiring the property in controversy at the time that the guaranty was made, and that he had at that time an expectation that he could furnish a purchaser for the property by the name of Flato, if Lawrence desired to sell the same. We reiterate the fact that at the time Lawrence purchased he was induced to do so by the guaranty made by McCord, but he did not agree to sell the property to McCord or to any other person, and that after he became the purchaser he did make an offer to sell all of the property he purchased, including that in controversy, to one John M. Hefley. And we further find that it was the intention of Lawrence and the assignees, at the time the sale was made, that the title to the property should pass to Lawrence; and in this connection we find, as said in the original certificate, that the sale was executed, except as that fact may be affected by the sale to Lawrence on credit.

"In view of the above statement and findings of fact, the Court of Civil Appeals propounds to the Supreme Court the following questions:

"1. While the sale, as between Lawrence and the assignees, may be regarded as executed, was it *in fieri* as to the plaintiffs, and could the latter have maintained an action to set it aside as not being for the best interest of the creditors, and if such remedy existed was the purchase by McCord, within the short time after the sale to Lawrence, valid?

"2. Having found as a fact that Lawrence only purchased by reason of the guaranty from McCord, and that at that time both parties believed, or, at least, they as men of ordinary prudence and foresight, from their knowledge of the facts, should have believed, that the contract of guaranty would have to be complied with, and that thereby McCord could acquire, during the time of the existence of his trusteeship of the estate, a title to the property, and having found as a fact that the property was sold to him by virtue of the contract of guaranty at the time when he was such assignee, was such purchase by McCord, as against the plaintiff, valid, and could the latter, under such state of facts, hold McCord responsible and liable for the property or its value so purchased from Lawrence?"

An answer to the first question propounded is rendered unnecessary by the following answer which we make to the second question: The good or bad faith of McCord in making the transaction with Lawrence is of no consequence in the investigation of the question submitted to us. Neither does it matter whether the transaction was beneficial or otherwise to the creditors. The fact that the creditors had placed upon the property an upset price is of no consequence, for Lawrence could not purchase at that price without the consent of the creditors although it might have been as much as could be obtained for it in the market. When McCord entered into the guaranty by which he bound himself at the option of Lawrence to furnish a purchaser for the property in question at the price for which he sold it to Lawrence he injected his own interest into this transaction. For the greater the price at which he should sell to Lawrence the greater the burden would rest upon him either to purchase or furnish a purchaser; therefore, it was to his interest to sell to Lawrence for the least sum, which was the price

named by the creditors. - It does not matter that a greater sum could not have been procured at that time from other parties, for the self-interest of the trustee in the transaction was such a vice as "leaveneth the whole lump" and renders the transaction voidable at the election of the *cestui que trust* without looking further into the matter than to ascertain that the interest existed. (Nabours v. McCord, 97 Texas, 526; Bennett, Ex parte, 10 Ves. Jr., 393; Greenfield Savings Bank v. Simons, 133 Mass., 415; Haswell v. Blake, 14 Texas Ct. Rep., 394; Thomas v. Brownville, R., 109 U. S., 523; Cook v. Berlin W. Mill. Co., 43 Wis., 443; Parker v. McKenna, L. R. 10 Chan. App., 118.)

This case was before this court on certificate heretofore, and we made a careful examination of this question and cited the authorities fully in that opinion. The facts as now presented to us are somewhat different, but they are still governed by the same principle of law as we announced in that opinion. In the former opinion we distinguished between the case then being examined and the case of Hickman v. Stewart, 69 Texas, 255, using this language: "There is a marked distinction between the rule applicable where the purchase is made by the trustee from the beneficiary, and such case as this, in which the trustee purchased from himself without the consent of the beneficiary. In the former class of cases, if there be fair dealing, full information given by the trustee and adequate consideration, the sale will be upheld upon the principle that the beneficiary has the power to contract with his agent. In the case before the court the sale was made to McCord without the consent or knowledge of the beneficiaries in the trust, and logically the sale must be voidable at the election of the *cestui que trust,* because no man can make a contract with himself, and McCord being agent and trustee for the creditors of the estate which he represented, did not have power to make a contract by which he would transfer the assets of that estate to himself. Such a sale might become valid by the approval of the beneficiaries, or through their failure, with full knowledge of the facts, to assert their right to set aside the sale within a reasonable time." The same rules of law that were applied to the facts then presented are applicable to the facts as now presenting which show the transaction to have been one in which McCord became interested as guarantor of the salability of the property and therefore liable at the option of Lawrence to respond by purchasing the property himself or furnishing a purchaser. The sin of self-interest thus injected into this transaction can not be condoned by good faith or good purposes on the part of the trustee, nor by good results in favor of the *cestui que trust.*

In Shannon v. Marmaduke (14 Texas, 217), the court said: "The rule is founded on the danger of imposition and the presumption of the existence of fraud inaccessible to the eye of the court. The policy of the rule is to shut the door against temptation, and which, in the cases in which such a relationship exists, is deemed to be of itself sufficient to create the disqualification." It might be that McCord acted alone with the purpose to benefit the creditors, but that is no answer to the fact that he was adversely interested.

The vital question in such a case is, Did the interest of the trustee become by his action, without the consent of the beneficiaries, adverse and antagonistic to the interest of the latter? Of this there can be no

question, we think, upon the facts presented to us, and we reply definitely to the question that the purchase by McCord under the guaranty, entered into as before stated, was invalid so far as the creditors were concerned and they had a right to have the sale set aside or to recover for damages sustained by them by reason of the transaction thus made by McCord.