A. O. SMITH, Jr., et al., Appellants,

v.

T. A. GRANT, III, et al., Appellees.

No. 8086.

Court of Civil Appeals of Texas, Texarkana.

June 27, 1972.

Rehearing Denied Aug. 15, 1972.

John D. Raffaelli, Raffaelli, Hawkins & Carter, Texarkana, for appellants.

B. A. Britt, Jr., Newman, Smith & Britt, Texarkana, Larry Bach, Dallas, for appellees.

CHADICK, Chief Justice.

This appeal is from a suit that originated as a declaratory judgment action. Invalidation of a written contract pertaining to the sale and purchase of real estate was the original objective. The appellees were plaintiffs in the trial court. The appellants, one as an intervenor and the remainder as defendants, answered the original petition and filed a cross-action praying judgment for specific performance of the written agreement, for relief associated therewith, and additionally on the part of the intervenor for collection of a real estate broker's commission.

In an effort to hold this opinion within tolerable bounds, a copy of the written agreement that is the focal point in the appeal is appended (Appendix A) and ref-

erences will be made to such copy as convenience requires. The document was usually referred to by the parties and the trial court as an option, though it evidences something more than a simple option. The instrument grants the optionee exclusive right to purchase real property described therein within four months after date, or any extension of the option period, at the price and upon the security therein specified. Separate consideration for the option is recited. The provisions of the instrument dealing with the option to purchase are incorporated in the first unnumbered paragraph and paragraphs numbered 1, 3, 4, 6, and 8.

The agreement is so written that when and if the optionee elects to purchase, the agreement becomes an executory contract of sale and purchase that distinctly sets out the obligation, rights and duties of the parties. This second aspect of the contract is evidenced by the provisions of the first unnumbered paragraph and paragraphs numbered 1, 2, 5, 7, 9, 10, 11, 12 and 13. Thus construed, the contract has a dual nature, which is a relatively common feature of sales contracts. 17 Am.Jur.2d Contracts, Sec. 32.

The appellees as plaintiff in their trial petition plead as follows:

"III. Plaintiffs would show the court that such option has long since lapsed, and was never completely exercised within the terms of said option agreement, and that therefore this court should declare such option to be null and void and of no effect."

Special Issue No. 1, the instruction given in connection with it and the jury's answer thereto are as follows, viz:

"*Special Issue No. 1.* Do you find from a preponderance of the evidence that the holders of the option did not fully exercise the option in accordance with the terms of the option?

Answer 'They did not fully exercise the option' or 'They did fully exercise the option.'

ANSWER: 'They did not fully exercise the option.'

If you have answered the above special issue 'They did not fully exercise the option,' then do not answer the following special issues; otherwise, answer them."

The appellants' first two points of error are in this language, to-wit:

"FIRST POINT. The court erred in overruling the motion for a directed verdict made by the defendants and cross-plaintiffs, A. O. Smith, Jr., and Judge B. Fite, and by the intervenor and cross-plaintiff, Katherine Clark, Individually and as Independent Executrix of the Estate of Don A. Clark, Deceased, upon the completion of all testimony by all parties and prior to the court's charge to the jury.

"SECOND POINT. The court erred in overruling the motion of the defendants and cross-plaintiffs, A. O. Smith, Jr. and Judge B. Fite, and intervenor and cross-plaintiff, Katherine Clark, Individually and as Independent Executrix of the Estate of Don A. Clark, Deceased, for judgment non obstante veredicto."

In order to sustain these points of error the evidence must show as a matter of law that the optionee elected to purchase the property described in accordance with the contract's provisions.

The contract under consideration bears date of June 27, 1967. The original optionee-buyer, Henry A. Yeats, died November 25, 1967. The optionor seller, Dr. R. R. Brunazzi, died February 24, 1969, and his widow Cecile Brunazzi died February 8, 1970. The broker, Don Clark, died July 22, 1969. Legal representatives and successors in interest of these decedents are parties to the lawsuit. The Dead Man's Statute, Vernon's Tex.Rev.Civ.Stat. Anno. art. 3716, was not waived and as a consequence of these deaths a limited history of the transaction between the original parties to the contract was developed in the trial court.

Dr. Brunazzi extended the option granted by the contract for an additional 40 days by letter dated October 23, 1967. The option was extended a second time on December 7, 1967, to and including the 26th day of December of that year. On behalf of the parties entitled to exercise the option, Judge B. Fite wrote a letter (Appendix B) to Dr. Brunazzi on December 19, 1967, saying in the opening paragraph that the optionees *intend* to exercise the option and requested that an abstract of title and other documents necessary for completion of the contractual transaction be delivered to a designated attorney for examination. Receipt of the Fite letter was acknowledged by Dr. Brunazzi's attorney in a letter addressed to Fite and dated December 21, 1967 (Appendix C). Besides acknowledging receipt of the Fite letter of December 19, the attorney's letter advised that an abstract of title had been delivered to Fite's attorney for examination and that supplement thereto had been ordered and would be forwarded.

The contract (¶ 6), required that notice of election to purchase be in writing and given either to Dr. Brunazzi or his attorney. The contract did not require any particular words or form to be used in giving notice. Williston, Contracts 3d ed. § 70 is cited in 17 Am.Jur.2d Contracts, § 45 for the precept that, " * * * where the offeror manifests his satisfaction with a mode of acceptance which the acceptor adopts, the law imposes upon both parties the obligation which they expect or by their course of conduct should have good reason to expect." Also of similar import, 13 T.J.2d, Contracts, Secs. 26, 29, and 38; 77 C.J.S. Sales § 33d. Although the Fite letter of December 19 uses language in the first sentence that may be construed as expressive of an *intent* to exercise the option in the future, the remainder of the letter is consistent with and implies a present exercise of the option by requesting that abstract of title and other documents necessary for completion of the transaction be furnished the optionees' attorney. In the setting of this record the letter constituted and was

sufficient as notice. Dr. Brunazzi's obligation to furnish an abstract, as written into the contract (¶ 7), matured and was triggered by an exercise of the option. The request that Dr. Brunazzi furnish the abstract clearly implied a present exercise of the option granted even if preceding language in the notice left room for doubt.

The letter of Dr. Brunazzi's lawyer (Appendix C) dated December 21, 1967, expressly acknowledges on behalf of Dr. Brunazzi that the option to purchase had previously been exercised. It also advised that abstracts of title had been supplied to Judge B. Fite's legal counsel and that a supplement would be forthcoming. The first sentence of the seventh paragraph of the contract provides:

"Upon the election to purchase * * * the seller may * * * furnish either a policy of title insurance * * * or abstract of title."

This provision required Dr. Brunazzi to determine to his satisfaction that the option had been exercised as prerequisite to an obligation on his part to furnish an abstract of title. Compliance with the obligation by furnishing the abstract was an implied acknowledgment by Dr. Brunazzi that the option had been exercised.

Besides the expressions and implications discussed, the parties' conduct after the exchange of letters mentioned manifests a recognition and agreement by both that a timely exercise of the option had occurred. Legal counsel for the optionee-buyer examined the abstracts, found defects in title and Judge B. Fite called upon Dr. Brunazzi to cure them. Dr. Brunazzi entertained the title objections and after a substantial period of negotiation an effort was made with his sanction to obtain curative conveyances. At no time before death did Dr. Brunazzi refuse performance on the ground that the option was not timely exercised by the optionee-buyers. The optionee-buyers negotiated with Dr. Brunazzi a substantial period of time in an effort to settle title objections and by solemn written no-

tice advised him that the terms of the contract would be enforced, but eventually agreed to waive the defects that stood in the way of closing the transaction.

■■ It is fundamental that an acceptance must comply with the terms of the offer, whether it be an option or other form of contract. In this instance, it is the appellees' position that the Fite letter of December 19th merely expressed an intent to exercise the option at a future time, that it was not an acceptance of the offer to sell according to its terms, that is to say, it was not an exercise of the option granted by the contract. This position ignores the conduct of the parties. In support of such narrow position, appellees cite Austin Presbyterian Theological Seminary v. Moorman, 391 S.W.2d 717 (Tex.Sup.1965). The case on appeal is clearly distinguishable. In the cited case the optionee neither expressly nor by conduct evidenced an intent to presently exercise the option granted. In this case as discussed, the expressions, conduct of the parties, and the implications therefrom clearly show an exercise of the option granted in the contract under review. Consideration of all the evidence in the record compels the conclusion that as a matter of law the optionee-buyer exercised the option granted. Exercise or not of the option was the central issue in the jury trial. No particular service would be performed by recounting and reviewing other evidence. The conclusion is inescapable that the appellants' first two points of error must be sustained.

The jury determination that the option was not fully exercised becomes immaterial if the record sustains the appellees' fourth counterpoint, which reads as follows:

"The Plaintiffs in the cause are entitled to judgment as a matter of law."

The argument in full under this counterpoint is this:

"The acquisition of the interest of Don Clark of July 5, 1967, before the deal was closed, represents double-dealing, for Don Clark was Brunazzi's agent, rendering the transaction voidable. The leading case of Burleson v. Earnest, 153 S.W.2d 869, 874 (Tex.Civ.App.1941) err. ref. w. o. m., states the rule succinctly:

"'The self interest of the agent is considered a vice, which renders the transaction voidable at the election of the principal without looking into the matter further than to ascertain that the interest of the agent exists. Nabours v. McCord, 100 Tex. 456, 100 S.W. 1152, Hume v. Baggett & Baggett, Tex.Civ.App. 221 S.W. 1002.'

"In Gilbert et al. v. Texas Co. et al., 218 S.W.2d 906, 944 (Tex.Civ.App.1949, err. ref. n. r. e.,) the Beaumont Court states:

"'The law abhors double dealing, especially upon the part of one in whom a trust is reposed and confidence given; and when the agent turns aside from the plain paths of his agency and seeks individual advantage inconsistent with, and antagonistic to, the rights and interests of his principal, his authority is automatically destroyed and agency revoked . . .' We believe that the duty the agent owes to his principal not to become a buyer is written into the contract of agency by the law itself.

"See also, Texas Brokerage Co. v. John Barkley & Co., [60 Tex.Civ.App. 466,] 128 S.W. 431 (Tex.Civ.App.1910) no writ hist.; 9 T.J.2d Brokers § 22, § 23.

"The burden is on the broker to show that his interest was revealed and ratified, Burleson v. Earnest, supra. There is no such showing. Therefore, the option agreement was and is void as a matter of law, and the Estate of Clark is not entitled to any commission."

■ Appellees' counterpoint and argument must be considered in context with the record. The Clark brokerage agreement, whether oral or written, was not proven. The original *option contract* heretofore discussed (¶ 11) recites that the sell-

er agrees to pay six per cent of the purchase price as a real estate broker's commission to Don A. Clark at the close of the transaction. The record does not show that Clark as broker was obligated to do or perform any brokerage function after the original contract was signed. Neither does the record show that he performed or offered to perform additional brokerage service after the parties entered into the contract referred to. Under very similar circumstances, it was held in Jones v. Allen, 294 S.W.2d 259 (Tex.Civ.App. Galveston 1956, wr. ref'd, n. r. e.) that the relationship of principal and agent was terminated by execution of an earnest money contract which obligated conveyance of the property. In that case the court said the sales contract had accomplished the purpose for which the agency was created and that the relationship of principal and agent (broker) terminated and the broker "thereafter had the same right as any other person to deal in the property." The principles applied in the cited case are determinative of this case, and the appellees' counterpoint is overruled. 9 T.J.2d Brokers, § 21.

### APPENDIX

(To conserve space the signatures and other purely formal and nonsubstantive portions of the following documents are not copied).

### "A"

### "AGREEMENT OF OPTION

"STATE OF TEXAS }
COUNTY OF DALLAS }

THAT, R. R. BRUNAZZI, owning and occupying land other than a homestead, (hereinafter called Seller), for and in consideration of the sum of FIVE THOUSAND FOUR HUNDRED EIGHTY THREE AND 33/100 DOLLARS ($5483.33) CASH in hand paid by HENRY A YEATS, his heirs, executors, successors, administrators and assigns, (hereinafter called Buyer), the receipt of which is hereby acknowledged, agree as follows:

1. Seller hereby gives and grants to buyers, their heirs and asisgns, the exclusive right to purchase the following described property in Bowie County, Texas, being parts of the Adolphus Hope Headright Survey and the R. G. Cannon Headright Survey, consisting of Thirty (30) acres of land; to-wit

" 'Being all of Tract No. 3 and that portion of the most easterly part of Tract No. 2 to make a total of Thirty (30) Acres, as shown on Plat dated July 12, 1955, signed by R. V. Hall, Civil Engineer, in the Exhibit attached hereto and made a part hereof, but excluding any easements, encroachments or road right-of-ways.'

2. Legal description of the 30 acre tract to be furnished by a Survey made at the expense of the seller, by a registered Texas Public Surveyor, such survey to be delivered to buyer as soon as completed.

3. The Cash payment herein made is given in consideration of an option. This written agreement shall be treated as an option so that the Buyer, at his option, may either perform and require performance of this contract fully, or disaffirm, in which latter case the Seller shall retain, as consideration for such option and liquidated damages, the said cash payment; no further liability or obligation in such case to be borne, performed or enforced by either party hereto.

4. The Option to purchase the property hereinbefore described at the agreed price is for a period of Four (4) months from the date of this agreement, so that during said period Seller shall not dispose of said property.

5. The purchase price for said property is $235,000.00, and upon election to purchase said option, price shall be due and payable upon approval of title by the Buyer, in the following manner:

$68,152.00 less $5,483.33 (option deposit) cash at time of closing, and $166,848.00 evidenced by a note payable in eight

annual installments of $20,856.00 each, and the note shall bear interest at the rate of 6% per annum and in addition to the payment on the principal a payment will be required annually on the interest at the rate specified. The first payment on the note will be one year from the date of its execution and a like payment will be due thereafter until note is paid in full. A vendor's lien will be retained in the deed to secure the payment of the note; should Buyer desire to have the lien on such land released then the Buyer or his assigns, may deposit an amount of cash in escrow, equal to the balance due and unpaid on such indebtedness. Agreement of escrow will provide for the escrow agent holding said funds as security for the payment of the note and upon the due date of any installment due on the note then the said escrow agent may release the escrowed funds to the extent of such payment. In the event the Buyer shall elect to have the vendor's lien on the land released and substitute in lieu for such lien, money, which will be deposited in escrow, then in such event, the interest rate on the note will change and the interest which will be paid will be the same as the interest paid by a bank/depository on the funds held by it pursuant to the escrow agreement. This agreement of escrow deposit will be embodied into a formal escrow agreement at the time of closing.

"6. Notice of election to purchase hereunder by said Buyer or their assigns, shall be in writing, given to the Seller at the following address: 1001 Main St., Texarkana, Texas, or to Norman Russell, Attorney, 803 Spruce St., Texarkana, Texas.

"7. Upon election to purchase, notice having been given in accordance with the terms hereof, the Seller may at his option furnish either a policy of title insurance equal to the sales price or abstract of title. If the Seller elects to furnish an abstract of title then he shall within ten (10) days after receipt of notice from the Buyer, or within such time as is necessary for ab-

stractor to compile or supplement such, furnish at his expense and deliver to the said Buyer or his assigns, at Dallas, Texas, or at an address designated on the notice within the continental limits of the United States, an abstract of title compiled by a Texarkana, Texas abstract company and certified to date showing record marketable title in the Seller. The Buyer shall have ten (10) days from and after delivery of said abstract of title in which to have same examined by an attorney of his choice. If marketable title is vested in Seller and is free and clear of all liens of every kind and description, defects, encumbrances, taxes and assessments, except taxes for the current year in which such option is exercised (which taxes shall be prorated to date of closing of purchase), then the seller shall execute a warranty deed, duly acknowledged and containing a covenant of general warranty to premises, herein described, in favor of Buyer or his assigns and the same warranty deed shall be delivered to said Buyer within ten days from such approval of title upon the payment of the agreed purchase price. If however, record marketable title as aforesaid shall not be shown by abstract or title objections are raised by a title company, Buyer shall within ten days state in writing to Seller the objections to such title. Any defect in or objection to such title not so stated shall be waived. Seller, shall, upon receipt of such title objection, if any, be obligated to meet and cure of record any such written objections within thirty days thereafter (except matters requiring litigation, if any, in which event such time would be allowed as is reasonably necessary to litigate such to final judgment) and to embody such matter in the abstract; but, if Seller shall not cure such objections as herein provided, then Buyer may (a) terminate this option and the consideration paid therefor shall be returned to the Buyer, or (b) Buyer may perform what has not been done in that respect, at the expense of the Seller, and to secure reimbursement therefor may deduct reasonable cost thereof from agreed sale price; upon curing of such defects, if any, then Seller shall

deliver the deed as herein provided for, to Buyer. At the time for delivery of the deed, the abstract of title and supplements thereto shall be delivered to and belong to Buyer.

"8. During the period of time for which this option is granted, or any extension thereof, Buyer shall have the right and privileges of ingress and egress upon the property covered by this option for the purpose of making surveys, soil tests, and such other tests and examinations considered necessary to determine adaptability of said property to Buyer's use. In conduct of such operation, Buyer shall have the right to place agents and employees upon said premises.

"9. Seller shall furnish to Buyer, certified evidence that the subject property is zoned for a 'Light Industrial District' as provided in the Code of Ordinance, City of Texarkana, Texas; and Buyer shall not be required to take under this agreement until such evidence is furnished to Buyer. In the event Seller is unable to furnish such evidence, then the consideration for the option paid herefor shall be returned to the Buyer.

"10. In the event Buyer, or his assigns, shall exercise the Option herein granted then all sums paid on this option shall be applied to the purchase price of the property.

"11. Seller agrees to pay a 6% Real Estate Brokers' commission of the purchase price, upon the closing of this sale, to Don A. Clark, Real Estate Broker, Texarkana, Texas.

"12. Seller agrees to grant any necessary water or sewer easements, without cost of the Buyer, through and within the acreage being retained by the Seller in Tract No. 2, heretofore outlined, with the provision that any such easements so granted by Seller upon request by Buyer, shall first have the approval of the Texarkana Texas Water and Sewer Co.

"13. The note and vendor's lien shall contain a release clause allowing release of lien on a per acre basis for the payment of $10,000.00 per acre and further providing that no more than 50% of any land fronting on road right-of-way shall be released. Road right-of-way shall be construed as existing roadway at time of purchase and not contemplated roadways within the acreage necessary for development.
June 27, 1967."

"B"

"December 19th, 1967
R. R. Brunazzi, M.D.
1001 Main Street
Texarkana, Texas

RE: OPTION: 30 acres of land as described by a Survey by R. V. Hall, Reg. Engineer, Texas # 8930, said land out of R. G. Cannon Survey and Adolphus Hope Headright Survey, Bowie County, Texas, dated October 6, 1967

Dear Dr. Brunazzi:

This writing will serve as notice to you that the principals represented by me intend to exercise the option granted by you under date of June 29, 1967 as extended.

Will you please cause to have delivered to Kirk Patton, Attorney at Law, Texarkana National Bank Building, Texarkana, Texas, an abstract of title for his examination and such other documents necessary for the completion of the terms of the option.

Of necessity the title of record will be vested in Judge B. Fite, Trustee, until such assignments required by the Estate of Henry A. Yeats are complete. Mr. Patton will be in touch with Mr. Russell concerning the style of the title.

Thank you very much for your forbearance in this trying time for us here."

"C"

"December 21, 1967

"Judge B. Fite
2744 West Davis
Dallas, Texas    75211

Re: Exercise of Brunazzi Option
Dear Mr. Fite:

Receipt is acknowledged of your letter of December 19, 1967, advising of the exer-

cise of the option to purchase Dr. Brunazzi's property. I have delivered the abstract of title on this date, December 21, to Mr. Patton for examination. I am requesting the Lawyers Title Agency to supplement this abstract from the date of the last supplement, namely September 6, 1967, and when such has been done to deliver it directly to Mr. Patton."

ORDERS

The judgment of the trial court is reversed and judgment rendered granting specific performance and associated relief as prayed by appellants. The parties are requested to submit a form of judgment to be entered in this court with the understanding that suggestions in that respect will not prejudice motions for rehearing or prosecution of appeal from this court.